UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                Plaintiff,

                          **Hon. Hugh B. Scott**

                          16CV321V

            v.

                          **Order**

RICHARD WAGSTAFF, et al.,

                Defendants.

Before this Court is plaintiff's attempt to obtain from the Buffalo Police Department (Ortiz v. Wagstaff, et al., Case No. 16CV321, hereinafter "Wagstaff") and the Erie County District Attorney's (Ortiz v. Case, et al., Case No. 16CV322, hereinafter "Case") files of the investigation and prosecution of his state homicide case and the investigation of two homicides. Presently before this Court in this action is plaintiff's motion to compel (Docket No. 26[1]), essentially based upon the Order of Erie County Court Judge Thomas Franczyk (e.g., Docket No. 8, Defs. Atty. Decl. ¶ 7, Exs. A, E). An identical motion was filed in Case (Case, Docket No. 32). These motions were briefed and argued together, with defendants' respective responses due by May 31, 2017, and argument held on June 7, 2017 (Docket Nos. 24-25, 27, 29). Defendants duly filed their respective responses (Docket No. 28). On June 7, 2017, the motion was deemed submitted (Docket No. 29).

---

[1] Citations only to the Docket Number here refer to filings in this case, or cited to "Wagstaff Docket No. __." This is to contrast the filings in the parallel case against Erie County District Attorney's office and named officials, Ortiz v. Case, et al., No. 16CV622, cited herein as "Case Docket No. ___."

The defense in Wagstaff produced for in camera inspection the police department's file (with privilege log), raising several privilege arguments against full disclosure to plaintiff. The defense in Case, however, declined to produce the prosecution file until they had assurances from the United States Attorney's office that they could produce the items without avoiding inadvertent disclosure of federal Grand Jury proceedings or violation of the Orders of Judge Richard Arcara, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, Order of Nov. 8, 2012; id., Order of Mar. 7, 2013.

This Court requested the view of the United States Attorney about the propriety of disclosing these materials and set a status conference for April 19, 2017 (Wagstaff, Docket No. 20; Case, Docket No. 25), see Fed. R. Civ. P. 24; 6-24 Moore's Federal Practice—Civil § 24.23 (2017). Assistant U.S. Attorney Michael Cerrone replied in Case (Case, Docket No. 26) that, absent a motion to compel from plaintiff specifying which Grand Jury material was being sought and the grounds for the request, the Government could not respond, reinforcing secrecy of Grand Jury proceedings (id.).

Plaintiff then filed the present motion to compel (Docket No. 26) in both actions (see Case, Docket No. 32). These motions were briefed and argued together, with defendants' respective responses due by May 31, 2017, and argument on June 7, 2017 (Docket Nos. 25, 29). Defendants duly filed their respective responses (Docket No. 28). As noted by the Wagstaff defense counsel during oral argument, these cases are separate and the defendants in each are in different postures; hence this Court is entering separate Orders in each case for the respective motions.

BACKGROUND

This is an action against members of the Buffalo Police Department responsible for investigation of the murders of Nelson and Miguel Camacho and for the arrest and prosecution of plaintiff for those offenses. Both this case and Case arise from plaintiff's conviction for and subsequent exoneration from the Camacho murders, with plaintiff alleging wrongful conviction and imprisonment, as well as state law claims for malicious prosecution.

In November 2004, plaintiff was arrested, tried and convicted of the murders of the Camachos. Plaintiff in Wagstaff alleges that defendants failed and refused to accept proof that exonerated plaintiff (Wagstaff, Docket No. 1, Compl. ¶ 51), that they were negligent in failing to investigate all leads (id. ¶ 53). Similarly, in Case, plaintiff alleges that the then-District Attorney Frank Sedita, III, failed to accept proof that plaintiff was wrongfully convicted. Plaintiff concludes that this willful refusal led plaintiff to be incarcerated for ten years (e.g., Case, Docket No. 1, Compl. ¶ 54), including the period from November 2012 (with the commencement of the federal prosecution) until his exoneration in May 2015.

Around November 2012, the Federal Bureau of Investigation and the U.S. Attorney's office conducted an investigation of the 10th and 7th Street gangs, learning that three other men were responsible for the Camacho murders, see United States v. Montalvo, et al., No. 11CR366 (hereinafter "Montalvo"), Docket No. 68, Superseding Indict. In Montalvo, defendants Misael Montalvo, Efrain Hidalgo, and Brandon Jonas eventually were charged with discharging a firearm causing the deaths of Nelson and Miguel Camacho, Montalvo, supra, Docket No. 68, Superseding Indict., Counts 2, 3, Special Findings. Montalvo (Montalvo, Docket No. 249), Hidalgo (Montalvo, Docket No. 239), and Jonas (Montalvo, Docket No. 244) each entered guilty

3

pleas, with Hidalgo (Montalvo, minute entry, Feb. 26, 2015) and Jonas (Montalvo, minute entry Mar. 11, 2015) pleading guilty to Count 2 of the Superseding Indictment (Montalvo, Docket No. 68) for discharging a firearm causing death with special finding that the victims were the Camacho brothers (id.). One of these three defendants has been sentenced (Montalvo, Docket No. 327, Judgment upon Efrain Hidalgo) and the remaining defendants await decisions relative to sentencing (Montalvo, Docket Nos. 264-66, 277, 300, 329).

Pursuant to Judge Arcara's Orders, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, Order of Nov. 8, 2012; id., Order of Mar. 7, 2013, the Government provided information (first to the Erie County District Attorney and then to plaintiff's criminal counsel, the late John Nuncherino) of plaintiff's innocence due to the involvement of the Montalvo defendants by allowing release of federal Grand Jury minutes and materials. A motion in state court to dismiss plaintiff's Indictment was granted in May 2015 (despite the Case defendants' initial opposition) and plaintiff commenced Case and Wagstaff the next year.

*In Camera*

The parties in both cases obtained an Order from Erie County Judge Franczyk (e.g., Docket No. 28, Defs. Atty. Decl. Ex. E) unsealing the prosecution and police department files surrounding the Camacho brothers' murders for release to defense counsel in these two cases. Counsel then was to identify to this Court objections and privileges for in camera review.

This Court reviewed in camera the materials produced by the police department defendants in Wagstaff. The Wagstaff defendants produced a privilege log of the in camera documents shown to this Court, asserting privileges that the documents contained sensitive law enforcement information that may create safety risks regarding confidential informants and

4

witnesses; documents that may reveal police tactics and strategies for investigations; some may have been obtained from or describing confidential proffers; at least one document possibly containing attorney work product. The privilege log also asserted that some of the items were not relevant to plaintiff's claims. Defendants contend, but did not specifically identify, that at least some of these materials were obtained from the Grand Jury (pursuant to Judge Arcara's Orders) and that Judge Arcara's Orders limited disclosure of these items, In re May 2011 Grand Jury Impaneled May 6, 2011, Misc. No. 13MR17, Order of Nov. 8, 2012; see Case, Docket No. 26. Those Orders disclosed Grand Jury documents and transcripts to the Erie County District Attorney and to in the investigation that led to the Indictment in Montalvo.

The parties in both cases obtained an Order from County Judge Franczyk unsealing the prosecution and police department files surrounding the Camacho brothers' murders for release to defense counsel in these two cases. These counsel then were to identify to this Court objections and privileges for in camera review. Defendants in Case, however, declined to produce their records for in camera and awaited guidance either from the United States or this Court on releasing federal Grand Jury materials.

This Court had invited input from the United States Attorney (including possible limited intervention in these cases) because of the unknowns in the in camera material) (Docket No. 20). Given these concerns, this Court will avoid inadvertent disclosure of material that should remain confidential. The in camera materials reviewed to date were not clearly delineated to show that they were Grand Jury materials or not.

After a series of status conferences jointly held for both cases regarding production of the confidential information from the defendants (e.g., Wagstaff, Docket Nos. 14, 16, 19, 21, 24),

5

this Court reviewed in camera the materials produced by the police defendants in Wagstaff. From the privilege log and the in camera items, most of the file post-dates plaintiff's 2004 arrest and his 2006 guilty plea (see, e.g., Case, Docket No. 1, Compl. ¶ 22). One document in the in camera materials is a synopsis of the police homicide investigation (hereinafter cited as "[summary]"). According to this summary, in November 2004, the police interviewed a witness who revealed the whereabouts of Hidalgo at the time of the murders [summary at 10]. In 2005, an informant told a detective that two other men murdered the Camachos, but the police in 2008 could not identify the incident referenced because the Camacho murders were cleared according to their records [summary at 11-12]. In 2011, that informant recanted the statement [summary at 14]. The summary notes a 2008 proffer made to the United States Attorney that alleged that someone other than plaintiff committed these murders [summary at 12]. In September 2009, a federal task force was established (including the Buffalo Police Department) to investigate gang activity in the Lower West Side, with Hidalgo becoming known to the task force [id.]. In June 2011, two officers met an informant who said they had information regarding Hidalgo's role in the murders [id.]. The summary also makes references to correspondence received by the United States Attorney's office relative to the investigation. On July 11, 2012, plaintiff was interviewed by officers, but he generally declined to answer questions [summary at 21]. In August 2012, another source was interviewed and said that plaintiff's apartment was being monitored and that on the night of the murder did not show anyone leaving the unit [statement at 23]. Proffer materials and interviews identified as confidential sources or work product included in the in camera have internal redactions (but not consistently).

A cursory review of this in camera material reveals a continuing investigation that occurred following plaintiff's conviction, following up leads first raised during the initial investigation of the Camacho murders and leads arising from the overlapping West Side gang interdiction investigation. Many of the documents concern the gang interdiction investigation(s) and lead to evidence for the prosecution of Montalvo, Hidalgo, and Jonas.

At the status conference of April 19, 2017 (Docket No. 21), parties (with Assistant U.S. Attorney Cerrone appearing as special friend of the Court) were instructed to work out the disputes from production of in camera materials and identify the confidential or highly sensitive materials involved, and whether plaintiff's present civil counsel somehow obtained the materials sought through plaintiff's now deceased criminal counsel. On May 10, 2017, the parties received a redacted version of the Government's transmittal letter of the federal Grand Jury materials to the Erie County District Attorney and to plaintiff's late criminal attorney (Docket No. 25). After further discussion about production of the sought materials, this Court gave plaintiff until May 24, 2017 (id.), to move formally to compel if necessary. Plaintiff then filed the present motion to compel (Docket No. 26).

*Plaintiff's Motion to Compel*

Plaintiff filed identical motions to compel in both cases (Case, Docket No. 32; Wagstaff, Docket No. 26). He argues that the Case defendants failed to produce for in camera inspection the confidential prosecution files. As required, plaintiff first moved before Judge Franczyk to unseal the prosecution and police investigative files in his prosecution (Docket No. 26, Pl. Atty. Affirm. ¶¶ 4-9; id., Pl. Memo. at first, second unnumbered pages), Townes v. New York City, No. CV-94-2595, 1996 U.S. Dist. LEXIS 20220, at *29 (E.D.N.Y. Apr. 1, 1996). Plaintiff

7

sought a status conference and asked that the defendants at least produce in camera these police and prosecution files (see Docket No. 26, Pl. Atty. Affirm. ¶¶ 11-13). While the Wagstaff defendants produced their files in camera, the Case defendants did not, awaiting guidance either from this Court or the United States regarding the propriety and scope of production of materials that included federal Grand Jury materials.

The Wagstaff defendants counter, first, that this motion is untimely, and, second, these defendants had complied with plaintiff's discovery demands (Docket No. 28, Defs. Atty. Decl. ¶ 6). While in general not opposing plaintiff's motion in state court to unseal police and prosecution records, these defendants requested that their disclosure be subject to redaction to avoid inadvertent disclosure of "'sensitive law enforcement investigations, confidential sources, non-routine investigative techniques and/or procedures, any statutorily exempt or privileged information, and/or any information that may endanger the safety of others'" (id. ¶ 10, Ex. C). Judge Franczyk ordered unsealing, but subject to objections for in camera inspection by this Court (id. ¶ 11, Ex. E). But Judge Franczyk's Order was never entered or served prior to a status conference in this case and defendants argue that this Court never ordered defendants to comply with Judge Franczyk's Order (id.).

Plaintiff then served document production and Interrogatories (id. ¶ 12, Ex. F). Defendants wrote to this Court, on January 18, 2017, stating that they were unable to respond to plaintiff's discovery demands due to the pending state court proceedings (id. ¶ 13, Ex. G). This Court then held a series of status conferences (Docket Nos. 14, 16, 19, 21, 24; see Docket No. 28, Defs. Atty. Decl. ¶¶ 14, 16), urging the parties to work out among themselves the outstanding discovery issues. Defendants then responded to plaintiff's demands (Docket No. 28,

8

Defs. Atty. Decl. ¶¶ 17, 19-20, Exs. I, L) and submitted to this Court the in camera materials (id. ¶ 18, Ex. J). Defendants now argue that plaintiff failed to raise any deficiencies in the materials produced pursuant to his demands and plaintiff failed to detail his attempts to resolve this discovery dispute absent the pending motion (id. ¶ 21).

During argument on June 7, 2017 (see Docket No. 29), defendants in this action reminded the Court that the motions arise in separate cases and that the materials now sought by plaintiff are not in these defendants' possession, control or custody.

## DISCUSSION

I.  Applicable Standard

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention. See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery

device, or conditioning the time and manner of that discovery, as well as upholding evidentiary privileges for confidential information. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C), (G); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005). This Court has broad discretion in issuing such a protective order. Seattle Times, supra, 467 U.S. at 36.

II.   Plaintiff's Cause of Action—Wrongful Conviction

This Court first considers plaintiff's causes of action to determine the scope of disclosure in this case.

For plaintiff's claims of wrongful conviction in violation of the Fourth and Fourteenth Amendments he must show a violation of his rights under those Amendments and the elements of wrongful conviction claim, see Manganiello v. City of N.Y., 612 F.3d 149, 160-61 (2d Cir. 2010). The Supreme Court in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), set forth at least

one element for an unconstitutional conviction or imprisonment claim; a § 1983 plaintiff needs to have had his conviction reversed, expunged, declared invalid, or called in to question by a grant of habeas relief in order to seek damages. The cases under Heck have dealt with plaintiffs who failed to allege a reversal or expungement of the offending conviction, e.g., Okongwu v. County of Erie, No. 14CV832, 2016 U.S. Dist. LEXIS 120807 (W.D.N.Y. Sept. 7, 2016) (Skretny, J.), or when the claim accrues, see, e.g., Heck, supra, 512 U.S. at 481-82, and thus have not dealt with other elements for a wrongful conviction claim.

In Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998), the Second Circuit affirmed a judgment against defendants for violating plaintiff's Fourth Amendment rights against unreasonable seizure (there, restriction of his travel following arraignment) in his § 1983 malicious prosecution claims, id. at 941, 944. The district court instructed the jury for plaintiff's § 1983 malicious prosecution claim that plaintiff was required to prove commencement or continuance of a criminal proceeding by defendants against plaintiff; termination of that proceeding in plaintiff's favor; the absence of probable cause; actual malice on defendants' part; and a post-arraignment deprivation of liberty (again, the travel restriction), id. at 943; see id. at 945-46. Applying the various decisions in Albright v. Oliver, 510 U.S. 266 (1994), the Second Circuit found no due process violation occurred but instead an unreasonable seizure of plaintiff's person in violation of the Fourth Amendment, Murphy, supra, 118 F.3d at 944. The elements of plaintiff's § 1983 malicious prosecution claim for that seizure is establishing seizure by a state actor; the seizure resulted from initiation or pendency of judicial proceedings, id., with the reasonableness of the seizure overlapping a state common law malicious prosecution element of probable cause, id. at 946.

11

The wrongful conviction tort is analogous to malicious prosecution, Heck, supra, 512 U.S. at 484; see also Pierce v. Gilchrist, 359 F.3d 1279, 1289, 1286 n.3 (10th Cir. 2004) (constitutional violation under § 1983 following wrongful conviction applied analogous common law tort of malicious prosecution, with claim predicated on federal constitutional violation). Courts have adopted elements of state common law tort of malicious prosecution that "are consistent with enforcement of a constitutional right" and "those that are not are rejected," Castellano v. Fragozo, 352 F.3d 939, 951 (5th Cir. 2003) (en banc). The en banc Fifth Circuit noted that "the Fourth Amendment of the United States Constitution cannot be circumscribed by state tort law," id. at 955. As a § 1983 claim, plaintiff needs to prove the deprivation of a federal constitutional right by persons acting under color of law, 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988); e.g., Sanders v. Walmart Stores, Inc., No. 3:16-cv-312-DJH, 2016 U.S. Dist. LEXIS 146565, at *6 (W.D. Ky. Oct. 24, 2016). Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995), held that plaintiff had sufficiently alleged that defendants had violated his "Fourth Amendment right to be free from unreasonable seizure of his person," to state "a § 1983 claim for malicious prosecution," id. Once plaintiff presents this claim "the court must engage in two inquiries: whether the defendant's conduct was tortious; and whether the plaintiff's injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment," id.; see also Murphy, supra, 118 F.3d at 944; Castellano, supra, 352 F.3d at 950, in the context of plaintiff being charged but later having the charges dismissed, Singer, supra, 63 F.3d at 112.

Malicious prosecution under New York common law, see Manganiello, supra, 612 F.3d at 160-61, is defendants initiated a prosecution against him, without probable cause to believe the

proceeding can succeed, the proceedings were begun with malice, and the matter terminated in plaintiff's favor, Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Cameron v. City of N.Y., 598 F.3d 50, 63 (2d Cir. 2010). The favorable termination element of malicious prosecution has not been extended to a wrongful conviction claim, Poventud v. City of N.Y., 750 F.3d 121, 130-32, 136 (2d Cir. 2014) (in banc). Plaintiff in both cases alleges that his 2004 Indictment was dismissed (e.g., Wagstaff, Docket No. 1, Compl. ¶ 38).

Thus, for this discovery dispute, the issue becomes whether the contents of these in camera records are relevant to that claim or an anticipated defense, Fed. R. Civ. P. 26(b)(1). But the general scope of discovery allows parties to obtain "nonprivileged matter" relevant to a claim or defense, id. Applying malicious prosecution elements at issue for that claim are whether probable cause for charging plaintiff existed and whether defendants in both cases acted with malice in pursuing the claims against him. Discovery also embraces discovery of nonprivileged matter relevant to a **defense**; defendants cannot rely upon documents in the in camera material to prove their defense without producing it to plaintiff.

If the malicious prosecution elements (save favorable termination) are applied to these claims of wrongful conviction in violation of the Fourth Amendment and under § 1983, the issue of probable cause here arises well after plaintiff's Indictment and conviction. The in camera file reviewed here consists mostly of the post-indictment investigation leading to the federal charges in Montalvo. Probable cause "can cease to exist if some fact later surfaces to exonerate the accused," Coleman v. City of N.Y., 49 Fed. App'x 342 (2d Cir. 2002) (Summary Order); see Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). "In order for probable cause

13

to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact," Lowth, supra, 82 F.3d at 571. Police officers and prosecutors, however, "are not obliged to exonerate [a] plaintiff or uncover exculpatory evidence, but the 'failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause,'" Lawrence v. City Cadillac, No. 10CV3324, 2010 U.S. Dist. LEXIS 132761, at *20 (S.D.N.Y. Dec. 9, 2010) (quoting Lowth, supra, 82 F.3d at 571). The in camera file here is proof of the intervening fact, the Montalvo investigation and prosecution.

But the entirety of that file is not necessary to establish plaintiff's claim or defend against it. Concerns remain about privileged items contained therein, such as portions (if not the entirety) of the file that were federal Grand Jury materials; disclosure of proffers and proffered subjects; disclosure of other confidential sources; and disclosure of confidential subjects in pending investigations. One reasons for reaching out to the Government here was to identify the existence of these in order to restrict production of sensitive items to plaintiff. Otherwise, decision of whether, and to what extent, to disclose the in camera file is in a vacuum.

This Court next considers plaintiff's motion to compel (Docket No. 26).

III.     Motion to Compel

As a motion to compel, ostensibly it should fail. As defense notes (Docket No. 28, Defs. Atty. Decl. ¶ 21), plaintiff fails to present deficiencies in their responses or plaintiff's objections to defendants' stated objections and asserted privileges. Plaintiff also did not detail his attempts to resolve this discovery dispute short of this motion (id.). Finally, defendants contend that plaintiff's present motion also is untimely (id. ¶¶ 27, 30). The Wagstaff defendants further argue

14

that they produced (subject to asserted objections and privileges) and plaintiff's motion addressed mainly to the failure of the Case defendants to produce (id. ¶¶ 28-29).

But this Court and the parties have discussed these issues in various status conferences (Docket Nos. 14, 16, 19, 21, 24) plaintiff's desire to obtain and review the unsealed police and prosecution files. Coupled with efforts suggested by this Court for the parties (in both actions) to work out this dispute among themselves, the good faith resolution requirement of Rule 37 was met albeit absent formal certification of the efforts.

Absent formal objection to what was not produced pursuant to plaintiff's demands or objections to defense stated objections, plaintiff's motion to compel (Docket No. 26) is **denied**.

IV. Scope of Production

After the in camera review of the Wagstaff-produced Buffalo Police file, plaintiff is entitled to see the synopsis of the homicide investigation (the first 26 pages of the file), with whatever redaction is necessary to exclude (a) proffer witnesses and (b) identified confidential sources. Further production of the underlying records summarized in the synopsis would be cumulative and (in light of the confidentiality and privilege issues raised herein) burdensome. As claimed by the defense, many of the documents are not relevant to plaintiff's claims or potential defenses in these two actions. Plaintiff, upon review of the synopsis and the privilege log, identifies particular documents in that in camera records that he believes are relevant to his claims or defenses he faces should make a motion to compel production of specific items.

Although the Wagstaff defendants object to producing plaintiff's statements to police detectives (in particular the memorandum dated July 11, 2012, and handwritten notes of September 6, 2012) because it may contain sensitive law enforcement information that may

15

create safety risks to witnesses and to those connected with the investigation, such risks are minimal here since the subject of the document is the plaintiff himself. Absent knowing the context that his questions could lead to others, the risk to those involved in the investigation is minimal. The June 29, 2011, July 11, 2012, reports of plaintiff's interviews with the Buffalo Police Department and notes from a September 6, 2012, interview of plaintiff (as well as other interviews by plaintiff) **should be produced**. But notes of telephone calls received and made by plaintiff and plaintiff's papers **need not be produced** since production would reveal investigative methods.

Plaintiff (or defendants) also could seek a further Order from Judge Arcara blessing the release of the Grand Jury materials to plaintiff and his civil counsel for use in these cases. Under the second Order in the In re May 2011 Grand Jury proceeding, Judge Arcara authorized release of those materials not only to the Erie County District Attorney but also to plaintiff's criminal defense counsel, but for the purpose of vacating his state conviction, In re May 2011 Grand Jury, Misc. No. 13MR17, Order of Mar. 7, 2013. Thus, plaintiff (through his criminal defense counsel) has seen the Grand Jury materials already but for that limited purpose of exoneration. The issue here is whether that information can also be used in plaintiff's civil actions following that exoneration by civil counsel not named in the Orders.

V.      Federal Grand Jury Materials and Judge Arcara's Orders

All parties in in Case urge this Court to alter Judge Arcara's Orders to allow release of the federal Grand Jury materials produced to defendants and to plaintiff's late criminal defense attorney. No one argues the authority or jurisdiction of this Court (or assigned District Judge Vilardo) to alter Judge Arcara's Orders to expressly allow release of the Grand Jury

16

materials to plaintiff's counsel. The <u>Wagstaff</u> defendants have taken no expressed position on this request, but merely raise the objection and defer to this Court's discretion (<u>see</u> Docket No. 28, Defs. Atty. Decl. ¶ 29). The <u>in camera</u> materials reviewed by this Court, however, did not indicate that they were provided to the Grand Jury and thus were encompassed in Judge Arcara's Orders.

Generally outside of an appeal, only the judge who issued an Order can revise it. Magistrate Judges lack the revision authority to alter a District Judge's Orders in that judge's discretion. An added complication here is that these civil cases were not assigned to Judge Arcara. Out of abundance of caution, plaintiff or defendants could seek leave from Judge Arcara to amend his Orders to allow plaintiff access and use of the Grand Jury materials in these civil cases as well, but Judge Arcara would have to enter Orders in cases not assigned to him (absent seeking reassignment of these cases). Alternatively, Judge Arcara could enter the amending Order in the proceeding in which the Grand Jury materials were transmitted in the first case, <u>In re May 2011 Grand Jury Impaneled May 6, 2011</u>, Misc. No. 13MR17, but plaintiff and the <u>Wagstaff</u> defendants are not parties to that proceeding. Regardless, this Court **declines** to enter an Order altering Judge Arcara's Orders because such an Order would be beyond this Court's authority or jurisdiction.

As discussed in the Order entered in <u>Case</u>, there are two possible sources of relief to adjust Judge Arcara's Orders. One is an application to Judge Arcara to amend the Orders in the <u>In re May 11 Grand Jury</u> proceeding; another option is to apply to Chief Judge Geraci (with notice to Judges Vilardo and Arcara) requesting reassignment of one (<u>Case</u>, for example) or both cases to Judge Arcara for disposition of the Grand Jury matter upon reassignment.

17

## CONCLUSION

For the reasons stated above, plaintiff's motion to compel (Docket No. 26) is **denied**.

Following this Court's in camera review of the Buffalo Police Department files from the Wagstaff defendants, defendants shall produce such documents from that file as identified in this Order. This Court **declines** to alter Judge Arcara's Orders surrounding disclosure of federal Grand Jury materials.

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 23, 2017