UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSUE ORTIZ,

                              Plaintiff,

                                                                    **Hon. Hugh B. Scott**


                                                                    **16CV321V**

                    v.
                                                                    **Report
                                                                    &
                                                                    Recommendation**


RICHARD WAGSTAFF, et al.,

                              Defendants.

---

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 33, Order of Aug. 25, 2017; <u>cf.</u> Docket No. 7, original non-dispositive referral

Order).  The instant matter before the Court is a motion of defendants (also referred to as "City

Defendants") (Docket No. 32) to dismiss this case for failure to state a claim.

        Following a dispositive referral (Docket No. 33), responses to the defense motion to

dismiss were due by September 29, 2017, with reply due by October 6, 2017 (Docket No. 34).

Plaintiff then moved to extend his time to respond (<u>see</u> Docket No. 36), which this Court granted

(<u>id.</u>); responses then were due by October 6, 2017, and reply by Oct. 13, 2017 (<u>id.</u>).

        In addition to responding to defendants' motion, plaintiff cross-moves for leave to file an

amended Complaint (Docket No. 37).  This Court scheduled responses to this cross-motion by

October 27, 2017, and replies to both motions were due by November 2, 2017, with both motions

deemed submitted as of November 2, 2017 (Docket No. 38).  Defendants filed a timely response

to this motion (Docket No. 40), and both sides filed timely replies to the respective motions (Docket Nos. 41 (plaintiff), 42 (defendants)).

Given the interrelationship between the motion and the cross-motion, the possibility that amending the Complaint might cure the defect defendants argue in their motion to dismiss, and the discovery issues if defendants' alternative of dismissal is not granted, all motions are considered together here in this Report & Recommendation.  Even though the motion for leave to amend by itself is non-dispositive and this Court addresses it in an Order, that motion will be considered with the dispositive relief sought in the motion to dismiss.

There is a parallel Ortiz v. Case action, wherein this plaintiff is suing the Erie County District Attorney and former and present prosecutors, Ortiz v. Case, et al., Case No. 16CV322 (or "Case"; the present case is also referred to as "Wagstaff")).  Both cases have had extensive discovery and motion practice, familiarity with the Order entered on June 23, 2017, in this action (Docket No. 30, also hereinafter the "June 23 Order") is presumed.

## BACKGROUND

As discussed in the June 23, 2017, Order (Docket No. 30, at 3-4), this is an action against known and unknown members of the Buffalo Police Department (as well as the Department itself) responsible for investigation of the murders of Nelson and Miguel Camacho and for the arrest and prosecution of plaintiff for those offenses.  Both this case and Case arise from plaintiff's conviction for and subsequent exoneration from the Camacho murders.  Plaintiff initially alleges wrongful conviction and imprisonment, as well as state law claims for malicious prosecution.

*Camacho Murders and <u>United States v. Montalvo</u>, 11CR366*

In November 2004, plaintiff was arrested, tried, and convicted of the murders of Nelson and Miguel Camacho. Plaintiff alleges in <u>Wagstaff</u> that defendants failed and refused to accept proof that exonerated him (Docket No. 1, Compl. ¶ 51) and that they were negligent in failing to investigate all leads (<u>id.</u> ¶ 53).

Around November 2012, the Federal Bureau of Investigation and the U.S. Attorney's office conducted an investigation of the 10th and 7th Street gangs, learning that three other men were responsible for the Camacho murders, <u>see United States v. Montalvo, et al.</u>, No. 11CR366 (hereinafter "<u>Montalvo</u>"), Docket No. 68, Superseding Indict. (<u>see also</u> Docket No. 37, Ex. 4, Pl. proposed Am. Compl. ¶ 49 ("Am. Compl.")). In <u>Montalvo</u>, defendants Misael Montalvo, Efrain Hidalgo, and Brandon Jonas eventually were charged with discharging a firearm causing the deaths of Nelson and Miguel Camacho, <u>Montalvo</u>, <u>supra</u>, Docket No. 68, Superseding Indict., Counts 2, 3, Special Findings. Montalvo (<u>Montalvo</u>, Docket No. 249), Hidalgo (<u>Montalvo</u>, Docket No. 239), and Jonas (<u>Montalvo</u>, Docket No. 244) each entered guilty pleas, with Hidalgo (<u>Montalvo</u>, minute entry, Feb. 26, 2015) and Jonas (<u>Montalvo</u>, minute entry Mar. 11, 2015) pleading guilty to Count 2 of the Superseding Indictment (<u>Montalvo</u>, Docket No. 68) for discharging a firearm causing death with special finding that the victims were the Camacho brothers (<u>id.</u>). One of these three defendants has been sentenced (<u>Montalvo</u>, Docket No. 327, Judgment upon Efrain Hidalgo) and the remaining defendants await decisions relative to sentencing (<u>Montalvo</u>, Docket Nos. 264-66, 277, 300, 329).

Pursuant to Judge Arcara's Orders, <u>In re May 2011 Grand Jury Impaneled May 6, 2011</u>, Misc. No. 13MR17, Order of Nov. 8, 2012; <u>id.</u>, Order of Mar. 7, 2013, the Government provided

(first to the Erie County District Attorney and then to plaintiff's criminal counsel, the late John Nuncherino) federal Grand Jury material. This material revealed plaintiff's innocence due to the involvement of the <u>Montalvo</u> defendants in the Camacho murders. Erie County Court granted plaintiff's motion to dismiss plaintiff's Indictment in May 2015 and plaintiff commenced <u>Wagstaff</u> and <u>Case</u> the next year.

*Complaint (Docket No. 1)*

Plaintiff alleged in his original Complaint (Docket No. 1) that he was wrongfully imprisoned for over ten years (<u>id.</u> ¶ 55). While captioned as violations of his Fourth and Fourteenth Amendment rights (<u>id.</u> at page 1; <u>see id.</u> ¶¶ 3, 16, 40; Docket No. 37, Pl. Memo. at 4), the Complaint alleges that it was brought under 42 U.S.C. § 1983 "and other [unspecified] state and federal laws for relief from commission of intentional and tortious acts" (Docket No. 1, Compl. ¶ 3). Plaintiff, now responding to defendants' motion to dismiss, contends that this Court should read the Complaint broadly and find that it alleges claims for malicious prosecution and abuse of process (Docket No. 37, Pl. Memo. at 2). The Complaint (<u>see id.</u>) alleged that plaintiff's conviction was vacated (Docket No. 1, Compl. ¶ 38), hence overcoming any defense to a false arrest claim that there was probable cause for the arrest (Docket No. 37, Pl. Memo. at 2, Ex. 1). Plaintiff also alleged that defendants coerced his confession from him (Docket No. 1, Compl. ¶ 18; <u>see</u> Docket No. 37, Pl. Memo. at 3).

Plaintiff claimed that defendants (the Buffalo Police Department through the defendant officers) acted recklessly or with intentional indifference to plaintiff's rights, leading to his false arrest, conviction, and incarceration (<u>id.</u> ¶ 49). He initially alleged due to illegal policies and practices that defendant supervisors did not effectively discipline, train, or otherwise supervise

4

the individual defendants who investigated the Camacho murders (id. ¶ 41).  Plaintiff claimed

that "Defendant" (it is unclear which) "maintained policies or customs exhibiting deliberate

indifference to the constitutional rights of citizens which caused violation of their constitutional

rights" (id. ¶ 42) by not ensuring that detainees with mental, emotional, or cognitive illnesses or

impairments were treated to avoid a coerced confession (id.).  Plaintiff argued that defendants

had a policy or custom to "endorse, authorize and enforce unconstitutional methods,

investigations, arrests, identifications, evidence disclosure and all other procedures related to the

Constitutional rights of citizens" (id. ¶ 43), with these defendants aware of exculpatory,

inconsistent, or contrary identification testimony but failed to provide them to plaintiff (id. ¶¶ 43,

46).  Individual defendants failed to provide exculpatory or Brady material, violating plaintiff's

constitutional rights (id. ¶¶ 47-48).  It was also the custom or policy of the Buffalo Police

Department to investigate inadequately civilian complaints against officers and instead tolerated

and condoned police misconduct (id. ¶ 45).  Under its "Claims for Relief" (id. at 14-18), the

Complaint claims that plaintiff was wrongfully imprisoned for over ten years (id. ¶ 55) as well as

the injuries and deprivations that result from incarceration (id. ¶¶ 56-68), which caused plaintiff

extreme and unnecessary emotional distress (id. ¶ 54).  He alleged that the Buffalo Police

Department had a policy or custom not to release him even after evidence was shown that he was

wrongfully convicted (id. ¶¶ 50-52).  "Defendant" (again without specifying which one, or

perhaps all "defendants") was negligent in failing to investigate all leads to the actual

perpetrators of the murders (id. ¶ 53).  Plaintiff now relies upon (and apparently now

incorporates) Judge Franczyk's decisions ordering a hearing on his motion to vacate his

conviction and the vacatur order (Docket No. 37, Pl. Memo. at 3; Docket No. 1, Compl. ¶¶ 34-39).

Plaintiff originally alleges federal subject matter jurisdiction as well as supplemental jurisdiction over his state law claims (id.; see 28 U.S.C. §§ 1331, 1343(3), (4), 1367). The original Complaint also alleges false imprisonment, negligence, intentional and negligent infliction of emotional distress (id. at 1).

Defendants answered the Complaint on August 15, 2016 (Docket No. 32, Defs. Atty. Decl. ¶ 9; Docket No. 6, Ans.). They now claim that plaintiff never filed a notice of claim regarding his asserted state law claims (Docket No. 32, Defs. Atty. Decl. ¶ 7).

After the original, non-dispositive referral of this case to the undersigned (Docket No. 7), this Court entered a Scheduling Order (Docket No. 10). Discovery was to be completed by May 29, 2017, with dispositive motion then due by August 28, 2017 (Docket No. 10). No one has moved to extend these deadlines, but due to extensive discovery motion practice and defendants' pending motion, the discovery and subsequent deadlines were held in abeyance (Docket No. 38).

*Defense Motion to Dismiss or to Compel Discovery (Docket No. 32)*

Defendants now move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and (c) (Docket No. 32). They claim that plaintiff "bizarrely complains of the alleged conduct of parties not named as defendants herein and for whom the City Defendants exert no control over" (id., Defs. Memo. at 2-3). They conclude that plaintiff fails to state a claim for which relief may be granted (id. at 3, 5, 6-17). Defendants also move for judgment on the pleadings (id. at 4).

First, defendants claim that the Buffalo Police Department is an administrative arm of the City of Buffalo (or "City," another defendant in this action) and lacks the capacity to be sued (id. at 5, 5-6). Next, they challenge plaintiff to state a cause of action against the known and John Doe defendants individually (id. at 5, 6-10). Defendants argue that the City is not liable under any respondeat superior theory (id. at 10-15), see Monell v. Department of Soc. Servs. of City of N.Y., 436 U.S. 685 (1978). Defendants next fault plaintiff for failing to follow New York General Municipal Law § 50 and its procedures for providing prior notice to the City before suing (id. at 5, 15-17).

Alternatively, defendants seek to compel discovery from plaintiff because plaintiff failed to respond to defense discovery demands (id. at 17-19; id., Defs. Atty. Decl. ¶¶ 10, 11, 17, Exs. A (document demand), B (Interrogatories)), save serving his initial disclosure back in November 2016 (id., Defs. Atty. Decl. ¶ 16, Ex. E). This Court held discovery deadlines in abeyance pending resolution of plaintiff's then-pending discovery issues (Docket Nos. 38 (Order), 32, Defs. Atty. Decl. ¶ 12; Docket No. 19). Prior to the June 23 Order, this Court set a briefing schedule for plaintiff to file his motion to compel (Docket Nos. 24, 25), which plaintiff did (Docket No. 26). The June 23 Order decided plaintiff's motion (Docket No. 30), but this Court had not restarted the Scheduling Order deadlines for completing discovery and subsequent deadlines. Meanwhile, defendants sought responses to their outstanding discovery demands by February 24, 2017, but plaintiff failed to respond (Docket No. 32, Defs. Atty. Decl. ¶ 13). On July 10 and 24, 2017, defendants renewed their demand for production (id. ¶¶ 14, 15, Exs. C, D), to no avail (id. ¶ 17). Plaintiff has not sought an extension of time to respond to these demands (id. ¶ 18).

Plaintiff argues that he alleges claims for false arrest and false imprisonment as well as malicious prosecution and abuse of process (Docket No. 37, Pl. Memo. at 1-2).  While probable cause is a defense in a malicious prosecution claim, plaintiff points out that this defense is overcome when the underlying conviction is overturned or vacated (id. at 2-3).  As for claims against the individual defendants, plaintiff relies upon the attached copy of the Orders of Judge Thomas Franczyk ordering hearings on plaintiff's conviction and ultimately vacating that conviction (id. at 3, Ex. 1; Docket No. 1, Compl. ¶¶ 34-39).  Plaintiff claims that the Complaint also alleges other causes of action, such as coerced confession, fabrication of evidence, and Brady violations (Docket No. 37, Pl. Memo. at 4), see Brady v. Maryland, 373 U.S. 83 (1963).  Plaintiff next contends that he sufficiently alleged a policy, custom, or usage to hold the City liable under Monell (id. at 6-8).

As for defendants' discovery demands, plaintiff replies that he would serve responses by November 15, 2017 (id. at 8-9), although there is no indication to this Court that plaintiff made such discovery responses.  Plaintiff attributes his delay in responding to these open discovery demands and the contest to obtain them (including motion practice and defendants' incomplete responses to his discovery demands) (id.).

Plaintiff also notes that an Amended Scheduling Order needs to be entered (id. at 10; see Docket No. 10, Scheduling Order; see also Docket No. 37, Pl. Atty. Decl. ¶ 6 (noting need to amend the Scheduling Order in Case)).

*Plaintiff's Cross-Motion for Leave to Amend the Complaint (Docket No. 37)*

After new co-counsel appeared (Docket No. 35), plaintiff also cross-moved and submitted with his response to defendants' motion a proposed Amended Complaint (Docket

8

No. 37, Pl. Atty. Decl. ¶¶ 8, 9, Exs. 4 (clean copy of proposed Amended Complaint), 5 (marked up version of proposed amended pleading)).  In support for leave to amend, plaintiff argues that the amendment would not be futile and that defendants are not prejudiced by the motion (id., Pl. Memo. at 9-12).  In the amendment, plaintiff now drops the Buffalo Police Department as a party (id., Pl. Atty. Decl. Exs. 4, 5).  In the amended pleading, plaintiff would add a discussion of his competence to be tried (id., Ex. 4, Am. Compl. ¶¶ 21-26, 29-31, 34, 36).  Plaintiff would add that he pled guilty but later changed his mind (id. ¶¶ 35, 37).  The proposed Amended Complaint specifies the individual defendants responsible for the criminal investigation and the alleged constitutional violations (e.g., id. ¶ 43), specifying (for example) inconsistencies in the evidence (id. ¶ 44).  The amendment expressly alleges that the violations of plaintiff's constitutional rights was Police Department policy (id. ¶¶ 68-69), with City officials and supervisors "directly participated in the constitutional violations" (id. ¶ 71).  The Amended Complaint alleges causes of action (all under 42 U.S.C. § 1983) for (1) false arrest and imprisonment, (2) malicious prosecution, (3) abuse of process, (4) violation of his Fifth Amendment right against self-incrimination, (id. ¶¶ 78-101, 1st-4th causes of action).  It also alleges a violation of plaintiff's right to be free from fabricated evidence and withholding of Brady material (id. ¶¶ 102-12, 5th, 6th causes of action).

Defendants first contend that this cross-motion is untimely under the Scheduling Order (Docket No. 40, Defs. Memo. at 3-5; see Docket No. 10, Scheduling Order (motions to amend due by October 28, 2016)).  Next, they argue that plaintiff committed undue delay and bad faith in seeking leave to amend now (id. at 6, 7).  Plaintiff seeks to amend after receiving defense

production while not responding to defendants' demands (id. at 7).  Defendants argue prejudice from an amendment for events now thirteen years old (id. at 8).

Finally, they contend that any amendment would be futile (id. at 9-12).  First, the amendment does not address plaintiff's state law claims (such as his negligent hiring and training claims) and his failure to file a notice of claim (id. at 10).  Second, plaintiff's proposed remaining claims cannot withstand a motion to dismiss (id. at 10-11), such as defendants' pending motion. Third, plaintiff's claims are time barred under N.Y. CPLR 214 (three-year period for personal injury claims, including civil rights claims) or N.Y. General Municipal Law § 50-i(1)(c) (one year, ninety days for action against municipal defendants) (id. at 11-12).

Plaintiff replies that he has good cause for amending the Complaint outside of the Scheduling Order period (Docket No. 41, Pl. Reply Memo. at 1-2), arguing that defendants moved to dismiss well after the leave to amend deadline (id.).  Defendants also did not adhere to the Scheduling Order, and that the Scheduling Order deadlines have expired due to defense discovery disputes (id.).  He relies upon this Court holding those deadlines in abeyance after the March 16, 2017, status conference (id. at 3).  Finally, he contends that discovery is still in its early stages and "still evolving" (id.) and thus he has acted with sufficient diligence (id.). Plaintiff denies again that defendants would be prejudiced by the amendment, since amendment back in January 2017 "was fine by Defendants because they stipulated to it, but amendment now—9 months later—when written discovery is just starting, would be prejudicial" (id. at 3-4). He denies that Rule 15(a)(2) is applicable to make the cross-motion untimely (cf. Docket No. 40, Defs. Memo. at 5) because that rule applies to a pre-answer motion, rather, defendants answered and then moved to dismiss (Docket No. 41, Pl. Reply Memo. at 4-6).

10

Next, plaintiff denies any undue delay or bad faith in now seeking leave to amend (id. at 6-7, 1-4). He discounts any prejudice to defendants from the thirteen years of retired witnesses and possible losses in memory, by noting that the amendment is for claims that initially arose in a timely action commenced for events that then occurred twelve years before (id. at 6).

As for the futility of amendment, plaintiff first contends that he no longer asserts state law claims (id. at 8). As recast, his claims assert federal civil rights violations, asserting the elements for each particular claim (id. at 9). As for the statute of limitations contention, plaintiff replies that (by relating back to the original Complaint), the Amended Complaint is timely (id. at 9-10).

## DISCUSSION

I.     Applicable Standards

A.     Dismissal for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S.

at 555; <u>Hicks</u>, <u>supra</u>, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), <u>rev'g</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [<u>Twombly</u>, <u>supra</u>, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Id.</u>, at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  <u>Ibid.</u>  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  <u>Id.</u>, at 557 . . . (brackets omitted)."

<u>Iqbal</u>, <u>supra</u>, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed

to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document

incorporated in it by reference.  <u>Goldman v. Belden</u>, 754 F.2d 1059 (2d Cir. 1985).  In

considering such a motion, the Court must accept as true all of the well pleaded facts alleged in

the Complaint.  <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985).

However, conclusory allegations that merely state the general legal conclusions necessary to

prevail on the merits and are unsupported by factual averments will not be accepted as true.  <u>New</u>

<u>York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F.

Supp. 2d 123 (N.D.N.Y. 2002).

Under Federal Rule of Civil Procedure 12(c) for judgment on pleadings, all well pleaded

factual allegations are assumed to be true and to be construed in the light most favorable to the

petitioner, <u>Patel v. Searles</u>, 305 F.3d 130, 134 (2d Cir. 2002), <u>cert. denied</u>, 538 U.S. 907 (2003);

<u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57, 61 (2d Cir. 1985).  This

presumption under Rule 12(c), however, does not apply to conclusory allegations, <u>BCCI</u>

12

Holdings v. Pharaon, 43 F. Supp. 2d 359, 364 (S.D.N.Y. 1999).  A motion under Rule 12(c) should be granted if the moving party is entitled to judgment as a matter of law, Burns Int'l Sec. Serv. v. International Union, 47 F.3d 14, 16 (2d Cir. 1994).

A motion for judgment on the pleadings under Rule 12(c) is governed by the standard similar to that for a motion to dismiss for failure to state a claim under Rule 12(b)(6), wherein the Court accepts as true all allegations in the Complaint and draws all inferences in favor of the non-movant, here plaintiff.  Wynn v. Welch, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.); see Bloor, supra, 754 F.2d 57.  As under Rule 12(b)(6), the Court cannot render a judgment on the pleadings dismissing a Complaint under Rule 12(c) unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); but cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Like a Rule 12(b)(6) motion, a Rule 12(c) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.  Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

B.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a) amendment of pleadings after the time to do so as of right requires either consent of all parties (apparently not present here) or by leave of the Court.  Under Rule 15(a), motions for leave to amend the complaint are to be freely given when

justice requires.  Granting such leave is within the sound discretion of the Court.  <u>Foman v.</u>
<u>Davis</u>, 371 U.S. 178, 182 (1962); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321,
330 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith
or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments
previously allowed, undue prejudice to the opposing party by virtue of allowance of the
amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely
given.'"  <u>Foman</u>, <u>supra</u>, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).  One court noted,
"prejudice to the opposing party is 'the most important factor' in determining whether leave to
amend should be granted or denied.  <u>Ruotolo v. City of N.Y.</u>, 514 F.3d 184, 191 (2d Cir. 2008)
(citation omitted).  'In gauging prejudice, [the court] consider[s], among other factors, whether
an amendment would require the opponent to expend significant additional resources to conduct
discovery and prepare for trial or significantly delay the resolution of the dispute.'  <u>Id.</u> at 192
(citation omitted)," <u>Taberna Capital Mgmt., LLC v. Jaggi</u>, No. 08 Civ. 11355 (DLC), 2020 U.S.
Dist. LEXIS 35347, at *4-5 (S.D.N.Y. Apr. 9, 2010).  The Court should not deny leave to amend
on mere delay only, <u>id.</u> at *5; <u>Ruotolo</u>, <u>supra</u>, 514 F.3d at 191.

As defendants note (Docket No. 40, at 3), a Scheduling Order "may be modified only for
good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4).  Under this Court's Local
Civil Rules "a scheduling order cannot be modified except by Court order," W.D.N.Y. Loc. Civ.
R. 16(b)(4).  Modification of a Scheduling Order is done only upon a showing of good cause.
Fed. R. Civ. P. 16(b)(4); <u>see</u> 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal</u>
<u>Practice and Procedure</u> § 1522.1, at 230-31(Civil 2d ed. 1990).  "In the absence of some showing
of why an extension is warranted, the scheduling order shall control."  <u>Id.</u> at 231; <u>see also</u> <u>BPP</u>

Ill., LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d 188, 195 (2d Cir. 2017) (Docket No 41, Pl. Reply Memo. at 1).  This Court has broad discretion in preserving the integrity of its Scheduling Orders, see Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996), including the discretion to extend its deadlines when good cause is shown.  There needs to be a showing of good cause to justify an untimely amendment or motion for leave to add parties under Rule 16(b) and the Scheduling Order, see Carnite v. Granada Hosp. Group, 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (Foschio, Mag. J.) (Report & Recommendation), adopted, 175 F.R.D. at 441 (Arcara, J.).  In Carnite, Magistrate Judge Foschio addressed that plaintiff's failure to move to amend the Scheduling Order and his failure to raise "even [a] facially persuasive reason" to grant relief, Carnite, supra, 175 F.R.D. at 448.

C.     Federal Civil Rights Violation

As noted by defendants (Docket No. 32, Defs. Memo. at 8), to state a valid claim under § 1983, plaintiff has to allege that defendants acted under color of state law (not in dispute here) and that they deprived plaintiff of a right, privilege or immunity secured by the United States Constitution or laws of the United States, see Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997).

D.     Compel Discovery

As noted in the June 23 Order (Docket No. 30, at 9-10), discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery, as well as upholding evidentiary privileges for confidential information. Fed. R. Civ. P. 26(c)(1), (1)(B)-(C), (G); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an Order compelling discovery, with that motion including a certification that the movant in good faith conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention. Fed. R. Civ. P. 37(a)(2)(A). Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c). Under Rule 26(c), the Court has power to protect against abuses in discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The appropriateness of a protective Order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought. Mitchell v.

16

Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005).  This Court has broad discretion in issuing such a protective order.  Seattle Times, supra, 467 U.S. at 36.

E.      The Order in Which Motions Will Be Addressed

As stated at the outset, plaintiff's cross-motion for leave to amend the Complaint may moot defendants' motion to dismiss on two basis.  First, if the amendment addresses the defects defendants claim, then the motion to dismiss should be denied and leave granted for amending the Complaint.  Second, the motion to dismiss addressed the original Complaint.  If leave to amend is granted, the Amended Complaint replaces the original Complaint.  Furthermore, if defendants' motion to dismiss is denied, their motion to compel discovery needs to be considered.  Even the discovery alternative motion is contingent upon what pleading plaintiff is asserting.

This Court addresses first the cross-motion for leave to amend, then the substance of defendants' motion to dismiss.  If appropriate, this Court then will consider defendants' alternative motion to compel.

II.     Leave to Amend this Complaint

First, plaintiff would amend the Complaint to eliminate the Buffalo Police Department as a defendant.  Leave for that amendment **should be granted**; as a department of the defendant City, the Police Department does not have an independent existence apart from the City to allow it to be sued separately from the City, Loria v. Town of Irondequoit, 775 F. Supp. 599, 606 (W.D.N.Y. 1990) (Telesca, Ch.J.) (Docket No. 32, Defs. Memo. at 6).  As a result, defendants' motion to dismiss so much of the original Complaint as against this municipal department is

**deemed moot** given (1) plaintiff's motion to amend out this contention and (2) the grant of that leave.

The other amendments require further inquiry. Plaintiff's amendments clearly state claims under the Fourth and Fourteenth Amendments for otherwise state torts of false arrest, malicious prosecution, and abuse of process. Within the factual allegations are claims sounding in supervisory liability, but plaintiff does not expressly allege that defendants failed to supervise or train the named and John Doe individual defendants.

As for defendants' objection that the amendment does not address plaintiff's state law claims, the amendment does so by dropping those claims (see Docket No. 41, Pl. Reply Memo. at 8; Docket No. 42, Defs. Reply Memo. at 2). The jurisdictional provision of the Amended Complaint (Docket No. 37, Ex. 4, Am. Compl. ¶ 5) does not allege supplemental jurisdiction and the claims alleged in the Amended Complaint are exclusively federal civil rights claims (or state law claims glossed as federal civil rights violations). Federal claims do not require the notice of claim procedure against a municipality, Howlett v. Rose, 496 U.S. 356, 376-77 (1990); Felder v. Casey, 487 U.S. 131 (1988).

A.    Is This Amendment Timely?

Defendants raise two timing arguments against granting leave. First is the Rule 16 Scheduling Order objection. They contend that motions for leave to amend were due back in October 28, 2016, and (without any motion for extension of that deadline) plaintiff's present cross-motion is untimely. Second is the statute of limitations objection, that plaintiff is amending the Complaint to address violations that occurred thirteen years ago without any

tolling of the three-year civil rights personal injury limitations period (or the one year and ninety

days period for civil suits against the City and its officials).

Plaintiff did not seek leave of this Court to file the cross-motion or to extend his time to

seek leave.  Although the Scheduling Order was held in abeyance and needs to have new dates

set, the deadline for amendments of pleadings has long passed when the Scheduling Order was

held in abeyance.  No one indicated that the motion to amend deadline should be revived or

extended.  Plaintiff does not give good cause for extending (in effect, reviving) the deadline for a

motion to amend, see Carnite, supra, 175 F.R.D. at 448.  There is no change in facts or law after

the amendment deadline to warrant its revival; in fact, the only changes were new co-counsel

coming on to the case (see Docket No. 35, Notice of Appearance, filed Sept. 1, 2017) and

defendants' pending motion to dismiss (Docket No. 32, filed Aug. 17, 2017).  Plaintiff's

argument that defendants timed their motion to preclude plaintiff's amendment motion (Docket

No. 41, Pl. Reply Memo. at 1) is unavailing; defendants followed the timing of the Scheduling

Order which had dispositive motions (both for summary judgment and to dismiss) due by

August 28, 2017 (Docket No. 10).  At any time after the deadline for motions for leave to amend,

plaintiff could have moved for revival or extension of that deadline; plaintiff did not do this.

Under Rule 16, the required content of a Scheduling Order is to limit time "to join other parties,

amend the pleadings, complete discovery, and file motions," Fed. R. Civ. P. 16(b)(3)(A); see

W.D.N.Y. Loc. Civ. R. 16(b)(4), in that order.  This Court presumes in issuing the Scheduling

Order that claims and parties will be resolved well before the discovery and dispositive motion

deadlines; otherwise, defendants will be conducting discovery and ultimately litigating a moving

target of evolving claims.

In amending here, plaintiff merely recast what were in effect state law claims (under a vague assertion of Fourth and Fourteenth Amendment rights) as civil rights violations. Rather than seeking extension of time to make such an amendment, plaintiff waits until defendants have moved to dismiss the original pleading to cross-move to amend it.

Rule 15(a)(1)(B) does not afford plaintiff the opportunity to amend as a matter of course upon defendants' motion to dismiss. As plaintiff argues (Docket No. 41, Pl. Reply Memo. at 5-6), that rule applies for the **<u>initial</u>** appearance by a defendant (that is, an Answer or pre-Answer motion). In this case, the 21-day period for amendment as a matter of course under this Rule ended here on Tuesday, September 6, 2016 (or the next business day after 21 days ran), after defendants' August 15, 2016, Answer (Docket No. 6). Thus, any amendment here would be under Rule 15(a)(2), the freely granted leave to amend unless that amendment is prejudicial, futile, or made after undue delay. Rule 15(a)(2) dovetails with Rule 16 regarding the timeliness of the motion for leave to amend; such a motion may be unduly delayed, violating both Rules 15 and 16.

Even under the liberal leave to amend standard under Rule 15(a)(2), plaintiff is **too late** seeking these amendments. Leave to amend the substance proposed by plaintiff **should be denied**. The delay here is not (as defendants alternatively argue) the twelve to thirteen years from the events that led to plaintiff's prosecution. Relation back under Rule 15(c) covers this twelve to thirteen year period so long as the original Complaint was timely alleging claims from plaintiff's 2004 arrest and prosecution.

The delay here that leads to denial of leave is the period after the motion for leave deadline had passed. Plaintiff delayed during the months from the original filing of the

Complaint to when defendants now move to dismiss where plaintiff could have moved to recast his allegations or sought an extension of time to amend but did not do so.

Even though this Court just recommended granting leave to amend the Complaint to eliminate the Buffalo Police Department as a party, the timeliness of that particular amendment is not in question. All parties agree that the Buffalo Police Department is not a suable entity and should not be a party.

Ordinarily, this Court can decide a Rule 15 motion without subsequent affirmation of a Recommendation by the District Judge. Again, given the interrelationship between defendants' motion to dismiss and this cross-motion for leave to amend (presumably addressing defendants' motion by redrafting the Complaint), plaintiff's cross-motion should be addressed initially in this Report & Recommendation rather than by a separate Order of this Court. Thus, any objections to this recommended disposition should be resolved by the District Judge de novo, see Fed. R. Civ. P. 72(b)(3), rather than on the clearly erroneous or contrary to law standard normally applicable to merely denying a motion for leave to amend, cf. Fed. R. Civ. P. 72(a).

For a complete record, this Court next considers the substance of the proposed amendments and then defendants' motion to dismiss the original Complaint. The next question is whether the amended claims, even if timely, state a cause of action, whether these amendments are futile or are they prejudicial to defendants.

B.    Are Defendants Prejudiced by this Amendment?

Defendants' prejudice argument has two parts as well. First, defendants raise the general prejudice of having to address new claims. Second, they argue that plaintiff amended his

Complaint after receiving discovery from defendants while their demands to plaintiff go unanswered.

As for the first ground, there is no prejudice to defendants here. Plaintiff asserted in his original Complaint the same facts and many of the same legal contentions as he raises in the Amended Complaint. The amendment merely explicitly ties otherwise state tort claims to federal constitutional rights.

The defense's second argument has some merit. After they produced discovery (after much discussion about the discoverability of federal Grand Jury material) plaintiff cross-moved to amend his Complaint. Defendants thus lacked the means to alter their position relative to what was found in discovery since they still await plaintiff's responses to their demands. Plaintiff changing his theory ordinarily does not unduly prejudice his opponent because discovery is available even on the new theories, see Taberna Capital, supra, 2010 U.S. Dist. LEXIS 35347, at *5-6; Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000). The prejudice, however, is whether defendants would be disadvantaged at trial if the amended claims were allowed to proceed, see Silverstein v. Penguin Putnam, Inc., 522 F. Supp. 2d 579, 604 (S.D.N.Y. 2007); Cruz, supra, 202 F.3d at 569 (prejudice arises from disadvantage in presenting opponent's case). Defendants here can seek discovery on the federal versions of plaintiff's state law claims, especially since the Scheduling Order has been held in abeyance in this case. Discovery does not need to be reopened (which would be a sign of prejudice, see Katz v. Ida K. Stark Trust (In re Van Dyke/Columbia Printing), 289 B.R. 304, 316 (D. Conn. 2003); RNB Garments Phil., Inc. v. Lau, No. 98 CIV. 4561, 1999 U.S. Dist. LEXIS 15545, at *3 (S.D.N.Y. Oct. 5, 1999) (amendment is especially prejudicial when discovery is completed and opponent

has moved for summary judgment)).  Therefore, defendants here have not been prejudiced, even though plaintiff amended based upon information he obtained from unilateral discovery. Defendants still have the opportunity to conduct discovery, including compelling old requests and seeking supplemental or amended requests based upon plaintiff's new claims.

C.    Is Amendment Here Futile?

Finally, defendants urge that this amendment would be futile since it fails to address the problems inherent in the original Complaint.  The Amended Complaint, as previously characterized, recast already alleged state tort claims as explicit federal constitutional violations. This Report discusses above the purely state law claims and how plaintiff's proposed amendment effectively drops them.  This Court examines these amended federal civil rights allegations to determine if they are futile.

1.    First Cause of Action—False Arrest and Imprisonment

To state a Fourth and Fourteenth Amendment violation for false arrest and imprisonment a plaintiff must show that the defendants intentionally confined him without his consent and without justification, Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Dufort v. City of N.Y., 874 F.3d 338, 2017 U.S. App. LEXIS 21322, at *16 (2d Cir. 2017).  "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff," Dufort, supra, 2017 U.S. App. LEXIS 21322, at *16 (summary judgment motion); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  As another Court found, "a section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law," Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant, supra, 101 F.3d 852); Grant v. City of Syracuse, No. 5:15-CV-445 (LEK/TWD), 2017

U.S. Dist. LEXIS 190763, at *10 (N.D.N.Y. Nov. 17, 2017).  Under New York law, false arrest and false imprisonment are synonymous, <u>Fincher v. County of Westchester</u>, 979 F. Supp. 989, 998 (S.D.N.Y. 1997) (citing <u>Posr v. Doherty</u>, 944 F.2d 91, 96 (2d Cir. 1991)); <u>Grant</u>, <u>supra</u>, 2017 U.S. Dist. LEXIS 190763, at *10.

Here, plaintiff proposes to allege the elements of a federal civil rights false arrest/false imprisonment claim (<u>cf.</u> Docket No. 37, Ex. 4, Am. Compl. ¶¶ 78-84), that defendants intended to confine him, that they acted without probable cause, and that plaintiff suffered injuries and damages as a result (<u>id.</u> ¶¶ 82-84).  As a federal law claim, this cause of action is not futile.  If timely filed, plaintiff could have sought leave to amend on this cause of action.

2.    Second Cause of Action—Malicious Prosecution

The Second Circuit noted that, in the absence of federal common law, a malicious prosecution claim under § 1983 is governed by state law, <u>Dufort</u>, <u>supra</u>, 2017 U.S. App. LEXIS 21322, at *24.   That is, plaintiff has to allege that a criminal prosecution was commenced against him, that was terminated in his favor, there was an absence of probable cause for the proceeding, and actual malice, <u>id.</u>, quoting <u>Smith-Hunter v. Harvey</u>, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438 (2000).

Here, plaintiff would claim that he was prosecuted ("arrest, arraignment, indictment, conviction, and incarceration," Docket No. 37, Ex. 4, Am. Compl. ¶ 86), and ultimately terminated in his favor in the grant of his motion to vacate his conviction (<u>id.</u> ¶¶ 56-64, 89).  He would contend (again) that defendants acted without probable cause (<u>id.</u> ¶ 90) and he suffered injuries as a result (<u>id.</u> ¶ 91).  As with the First Cause of Action, defendants focused on the state law aspect of these claims and their timeliness, not on whether the <u>federal law</u> aspect was futile

for each cause of action.  Again, had leave to amend to assert this claim been timely sought,

plaintiff states a non-futile malicious prosecution claim.

          3.      Third Cause of Action—Abuse of Process

       To allege an abuse of process claim under § 1983, the plaintiff must allege more than

defendants retaliated against him by arresting and prosecuting him.  Plaintiff needs to "claim that

[defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal

prosecution."  Savino v. City of N.Y., 331 F.3d 63, 77 (2d Cir. 2003); Mitchell v. City of N.Y.,

841 F.3d 72, 80 (2d Cir. 2016).  Plaintiff, however, alleges that abuse of process under New

York law applies under § 1983 (Docket No. 37, Ex. 4, Am. Compl. ¶ 94), see also Mangino v.

Incorp. Village of Patchogue, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (abuse of process claim under

§ 1983 based on state law elements, quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)).

While closely allied with the tort of malicious prosecution, Cook, supra, 41 F.3d at 80, "'the gist

of abuse of process is the improper use of process after it is regularly issued,'" id., quoting

2 N.Y. Pattern Jury Instruction § 3:51, at 816 (1968).  Under New York law, malicious abuse of

process lies against a defendant who employs regularly issued legal process, with the intent to do

harm without excuse or justification, and in order to obtain a collateral objective that is outside

the legitimate ends of the process, Cook, supra, 41 F.3d at 80, citing Curiano v. Suozzi,

63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468 (1984); Board of Educ. of Farmingdale v.

Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642 (1975).

This third element must be to achieve "an improper or ulterior 'purpose or objective,'" Ross v.

Dempsey Unif. and Linen Supply, No. 3:16-CV-1208 (NAM/DJS), 2016 U.S. Dist. LEXIS

180383, at *24 (N.D.N.Y. Dec. 29, 2016); quoting Savino, supra, 331 F.3d at 78.  Merely

alleging an improper motive does not allege this third element, <u>Ross</u>, <u>supra</u>, 2016 U.S. Dist. LEXIS 180383, at *24.  To be actionable under § 1983, the abuse of process must be malicious, <u>Cook</u>, <u>supra</u>, 41 F.3d at 80.

Plaintiff in the amended and original pleading does not allege any collateral purpose or objective for defendants arresting and prosecuting him.  Instead, he proposes to argue that the harm of the process was "without excuse or justification in order to obtain [plaintiff's] conviction outside the legitimate ends of the legal process" (Docket No. 37, Ex. 4, Am. Compl. ¶ 93).  This is not distinct from seeking a conviction.  Plaintiff does not allege a collateral objective; at most, he alleges an improper motive.  Motive absent a collateral purpose fails to state a claim for abuse of process.  This claim should be dismissed; defendants' motion (Docket No. 32) on this claim should be **granted** and leave for plaintiff (Docket No. 37) to amend the Complaint to allege this claim explicitly should be **denied**.

4.    Fourth Cause of Action—Violation of Plaintiff's Right against Self-Incrimination

Under the Fifth Amendment (and the Fourteenth Amendment as applied to the states), a suspect cannot be compelled to testify against himself, <u>see</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  For civil liability for violating this right, plaintiff needs to allege failure to advise plaintiff of his rights and coercion was applied to obtain a waiver of plaintiff's right against self-incrimination or to obtain inculpatory statements, and the statements were used against the plaintiff in a criminal proceeding, <u>Deshawn E. by Charlotte E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998); <u>see</u> <u>Weaver v. Brenner</u>, 40 F.3d 527, 535 (2d Cir. 1994).

Here, plaintiff proposes to claim that defendants coerced his confession and used those statements against him in violation of his Fifth Amendment rights (Docket No. 37, Ex. 4, Am.

26

Compl. ¶ 99).  Defendants again do not address this federal claim.  For the alleged coercion, plaintiff states that he was diagnosed as suffering from a psychotic illness and deemed early in the case incompetent to stand trial (id. ¶¶ 24, 21-23, 36, 40a., f.).  At a May 2005 competency hearing, plaintiff reports that a Dr. Coggins testified that plaintiff could have suffered a serious mental illness on November 11, 2004 (the day of the Camacho murders), and "may have been experiencing his first psychotic break from reality" (id. ¶¶ 31, 20).  On November 16, 2004, plaintiff was arrested, was interrogated, and confessed (id. ¶¶ 19-20).  On November 22, 2004, plaintiff was ordered to undergo a competency exam and days later he was declared incompetent (id. ¶¶ 21-24).  On November 17 when admitted to state custody, plaintiff appeared to be in a perplexed and frightened state (id. ¶ 22).  In 2012, Federal Bureau of Investigation agents questioned plaintiff and plaintiff stated that he confessed because he "kinda lost my mind for a while" and when detectives questioned plaintiff he had been awake for three days straight (see id. ¶ 48).

Accepting plaintiff's allegations as true for purposes of the motion to dismiss and reviewing the totality of circumstances asserted in the Complaint, plaintiff sufficiently alleges that he was coerced or under mental or psychological disability on November 16, 2004, when he confessed.  According to the Amended Complaint, plaintiff's psychotic condition continued through November 16 when questioned.  Again, if the motion for leave to amend were timely, this Fourth Cause of Action would not be futile.

          5.        Fifth Cause of Action—Due Process Right to Be Free from Fabricated Evidence

Plaintiff alleges that he has a right not to be deprived of his liberty due to the use of fabricated evidence (see Docket No. 37, Ex. 4, proposed Am. Compl. ¶¶ 40d., 102-06).  He relies

upon Higazy v. Templeton, 505 F.3d 161, 170 (2d Cir. 2007), for the proposition that a Fifth

Amendment violation is actionable as a Bivens constitutional cause of action (Docket No. 37, Pl.

Memo. at 4), see Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  Under

Higazy, the plaintiff has to allege that the confession was coerced, that it was used against him in

a criminal trial, Higazy, supra, 505 F.3d at 170 n.9; whether a statement is coerced is determined

by the totality of the circumstances, id. at 170; Deshawn E., supra, 156 F.3d at 346.  The

statement need not be introduced at trial to violate plaintiff's rights, the use or derivative use of

the statement anytime in the criminal proceeding violates plaintiff's Fifth Amendment rights,

Weaver, supra, 40 F.3d at 535; Higazy, supra, 505 F.3d at 171.

        As just discussed regarding the Fourth Cause of Action, plaintiff alleges fabricated

evidence through his coerced confession (Docket No. 37, Ex. 4, Am. Compl. ¶ 104), and the

totality of the circumstances (taking plaintiff's confession while he was in the midst of a

psychotic episode) shows that the confession was coerced.  Again, with the other federal claims,

defendants do not challenge the federal aspect of the claim.  Had plaintiff moved earlier (or

sought an extension of time to move) this claim would survive any test of futility.

        6.      Sixth Cause of Action—Right to Be Free from Brady Violation

        Brady v. Maryland, 373 U.S. 83 (1963), requires the prosecution to turn over to a

defendant at criminal trial evidence favorable to that defendant.  Brady is a criminal due process

case, that the prosecution afford defendant exculpatory evidence, see id.; Tchatat v. O'Hara,

249 F. Supp. 3d 701, 709 (S.D.N.Y. 2017) (Gorenstein, Mag. J.) (scope of Brady obligation is

for the prosecution to make available evidence that is actually favorable to accused).  This claim

is related to the fabricated evidence claim, since both are aspects of a § 1983 due process fair

trial claim, see Fappiano v. City of N.Y., 640 F. App'x 115, 118 (2d Cir. 2016) (summary Order).  "'There are three components of a true Brady violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued,'" United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)); Poventud v. City of N.Y., 750 F.3d 121, 131 (2d Cir. 2014) (en banc); Fappiano, supra, 640 F. App'x at 118.  "To establish prejudice, a plaintiff must show materiality," that is "'a reasonable probability of a different result,'" Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoted in turn in Poventud, supra, 750 F.3d at 131)).

A civil defendant could be liable for failing to produce Brady material in a criminal case, see Olsen v. Corriero, 189 F.3d 52, 55 (1st Cir. 1999) (damages awarded for Brady violation after plaintiff obtained vacatur of criminal conviction, upholding award only for damages associated with the trial and conviction but not for incarceration-based damages when plaintiff had not served time for the unlawful conviction); see also Poventud, supra, 750 F.3d at 135 (citing favorably Olsen); Carey v. Piphus, 435 U.S. 247, 266 (1978) (procedural due process violation subject to at least nominal damages).  The normal remedy for a Brady violation is vacatur of the judgment of conviction and a new trial in which the criminal defendant is provided with the material, Poventud, supra, 750 F.3d at 132.  Thus, plaintiff could recover for damages associated with the trial and conviction, not for the years spent incarcerated following conviction.

It is questionable whether to impose the Brady obligation on individual police officers, Tchatat, supra, 249 F. Supp. 3d at 710 & n.4 (citing cases); the court in Tchatat denied plaintiff's

29

motion for relief from spoliation, denying that the individual officers had a duty to preserve evidence, id.  Individual officers, however, "may be held liable for Brady violations when they intentionally suppress exculpatory evidence," Fappiano, supra, 640 F. App'x at 118 (citing cases in Circuit's "limited precedent").  In Fappiano, the Second Circuit noted that it has "never held that anything less than an intentional Brady violation establishes a § 1983 due process claim for damages, however, and we decline to do so here," id.

This is part of a criminal defendant's right to a fair trial and that party "may sue for damages under § 1983 for Brady violations that lead to a distorted evidentiary record being presented to the jury," Dufort, supra, 2017 U.S. App. LEXIS 21322, at *35; see Poventud, supra, 750 F.3d at 132.  The Brady violation has three elements, the evidence must be favorable to plaintiff (either it is exculpatory or impeaching); the evidence is suppressed by defendants; and prejudice must have ensued, United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004); Fappiano, supra, 640 F. App'x at 118.

Here, plaintiff would contend that defendants withheld exculpatory material (Docket No. 37, Ex. 4, Am. Compl. ¶¶ 40b., 42, 44, 108).  Plaintiff's prosecution and conviction were later determined to be invalid (id. ¶ 109); this may be plaintiff's prejudice.  The futility pleading issue, however, is whether plaintiff sufficiently alleges that the withholding of evidence was intentional.  One part of the Amended Complaint alleges that defendants "unconstitutional and intentional" actions, including the concealment, withholding, and failure to investigate exculpatory and inconsistent evidence (id. ¶ 40b.).  Defendants allegedly intentionally failed to turn over exculpatory material to the District Attorney's office (id. ¶ 42).  For the Rule 15(b)

threshold, plaintiff has alleged enough to avoid futility in amendment, had the amendment been sought on time.

7.    City's Supervisory Liability

The next issue is whether the City of Buffalo can be held liable under any of the causes of action alleged.  Defendants contend that plaintiff cannot establish municipal liability against them, that he did not articulate any policy or custom save from his own speculation, and he did not identify policy makers who implement or enforced such policies alleged (Docket No. 40, Defs. Memo. at 10-11).  Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipal employer is liable under § 1983 for policies or customs that cause its employees to violate a party's constitutional rights, but mere employment does not create vicarious liability against the municipality, id. at 692.  The Court held that "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983," id. at 694.

Plaintiff alleges customs and policies of the City (through its Police Department) that led to the deprivations of his rights in his arrest and ultimate conviction (Docket No 37, Ex. 4, Am. Compl. ¶¶ 68-69, 71[1]), concluding that this sufficiently pleads municipal liability (Docket No. 41, Pl. Memo. at 8).  While plaintiff enumerated the policies, customs, and usages that he believes led to violation of his rights, he does not claim supervisory or administrative decisions

---

[1]The Amended Complaint does not have a paragraph 70.

that led to each of those actions.  Some of them are general (such as deliberate indifference to the constitutional rights of citizens or failure to provide suspects with exculpatory <u>Brady</u> materials). Without more claimed, these allegations are conclusory and potentially futile.  Given the tardiness of plaintiff's amendment, however, this Court need not address whether the municipal liability claims are also futile.

D.    In Summary

Looking at the proposed Amended Complaint, had plaintiff sought leave to amend in a timely fashion, many of the claims alleged would survive a futility or prejudice test.  The problem with the motion for leave to amend, however, is its timeliness.  Plaintiff did not move to extend (or reopen) the period for amendment of pleadings and cross-moves now outside of that time under the Scheduling Order.  The holding of deadlines of that Order in abeyance did not include the already passed deadline for amendment to pleadings.  Therefore, plaintiff's motion (Docket No. 37) for leave to amend **should be denied as to most of the proposed amendments**.

Next, this Court considers the motion to dismiss the original Complaint (Docket No. 32).

III.    Motion to Dismiss the Original Complaint

Looking at the original Complaint (Docket No. 1), it alleges a failure to supervise claim that led to the violation of plaintiff's constitutional rights and the resulting suffering he endured (<u>see</u> <u>id.</u> ¶¶ 41-54).  That pleading asserts a <u>Monell</u> supervisory liability claim against the Buffalo Police Department and the City, rather than specifically alleging what the individual defendants did (or failed to do); plaintiff casts the original allegations as a product of the policy or custom of supervisory officials at the Buffalo Police Department and the City.  The Complaint is

conclusory in general and in its allegations of supervisory liability against the City (see Docket No. 42, Defs. Reply Memo. at 4, 5; see Docket No. 32, Defs. Memo. at 10-15).

As the defendants contend (Docket No. 42, Defs. Reply Memo. at 3), the original Complaint does not specify the conduct of the individual defendants in allegedly violating plaintiff's rights (see also Docket No 32, Defs. Memo. at 6-8). They rely upon the existence of probable cause to defeat false arrest or false imprisonment claims (see id. at 8-9) or malicious prosecution claim (see id. at 9-10) or abuse of process claim (id. at 10). As discussed in the Amended Complaint, defendants argue that the original pleading fails to assert municipal liability against the City (id. at 10-15).

Analysis of the proposed Amended Complaint's causes of action discussed in some detail the alleged constitutional violation for the claims of false arrest, false imprisonment, abuse of process, and the rest. The original Complaint blends these claims into a claim for deprivations arising from his conviction and imprisonment. The Amended Complaint clearly articulates these claims better, as plaintiff concedes (see Docket No 37, Pl. Memo. at 4, 6). The motion to dismiss, however, focuses on the initial Complaint and plaintiff belatedly sought leave to amend it. The Complaint does not plead enough facts to state a claim as shown by the omissions identified by the proposed Amended Complaint. Plaintiff alleges that his conviction was vacated (Docket No. 1, Compl. ¶¶ 37-38), hence addressing the affirmative defense of probable cause (see Docket No. 37, Pl. Memo. at 2).

The original Complaint alleged claims under § 1983 and state law. The state law claims are time barred under the General Municipal Law §§ 50-e and 50-i for a timely notice of claim

and timely commenced action (Docket No. 32, Defs. Memo. at 15-17). Plaintiff concedes that he

failed to serve a timely Notice of Claim for the state law claims (Docket No. 37, Pl. Memo. at 1).

IV.    Alternative Motion to Compel

Alternatively, defendants moved to compel answers to their pending discovery demands.

Plaintiff's response that he will produce by November 15, 2017 (Docket No. 37, Pl. Memo. at 8),

does not address the prejudice to that date of defendants not having discovery from him while he

had responses to his discovery from defendants. Again, there is no indication in this record that

plaintiff had responses to their demands as of November 15.

If the recommendation above to dismiss this case is adopted, defendants' alternative

motion to compel (Docket No. 32) becomes **moot**. If not, and despite plaintiff's representations

of compliance, defendants' motion to compel should be **granted**. This Court then would address

(if necessary) the timing of plaintiff's production and the Rule 37 sanctions aspect of defendants'

motion to compel.

V.    In Summary and the Amended Schedule

As a result, defendants' motion to dismiss (Docket No. 32) should be **granted in part**

**(regarding removing the Buffalo Police Department as a defendant), granted in part**

**denying leave to amend as to the remaining proposed amended allegations (as being**

**untimely) and granted as to the allegations in the original Complaint**. Plaintiff's cross-

motion for leave to amend (Docket No. 37) should be **granted in part only to allow**

**amendment to remove the Buffalo Police Department as a suable party and denied as to the**

**remaining amendments**, again on timeliness of his motion previously discussed. If both results

are adopted, nothing remains for adjudication because granting so much of defendants' motion to

dismiss would dismiss the entire case; as a result, defendants' alternative motion to compel (Docket No. 32) **becomes moot**.

Given the dispositive relief sought, this Court cannot enter an Amended Schedule until Judge Vilardo disposes of defendants' motion to dismiss. With the above recommendation, amending the Scheduling Order (absent rejection or modification of the recommendation) is unnecessary. Once Judge Vilardo ultimately decides these motions and, assuming some part of this case remains, this Court will set either an amended Scheduling Order for completion of discovery and for filing of motion for summary judgment or schedule a conference for that purpose. As noted in the alternative for the motion to compel, defendants' motion would be **granted** if claims remain.

## CONCLUSION

Based upon the above, it is recommended that defendants' motion to dismiss for failure to state a claim (Docket No. 32) be **granted in part, deemed moot in part** as discussed; this action **would be dismissed** if this recommendation is adopted. Defendants' alternative motion to compel (id.) is **deemed moot**, given the recommendation as to dismissal of the action. It is further recommended that plaintiff's cross-motion (Docket No. 37) for leave to amend the Complaint be **granted in part only to remove the Buffalo Police Department as a party, and denied in part, denying amending the substantive allegations and claims**.

If, however, these recommendations are not adopted or modified in such a way as to have some claims survive, this Court will either schedule a status conference or amend the Scheduling Order (Docket No. 10) to extend time for completion of discovery; defendants' motion (Docket No. 32) alternative to compel discovery from plaintiff would be **granted**.

35

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
December 13, 2017

37