UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSUE ORTIZ,<br><br>                                    Plaintiff,<br><br>              vs.<br><br>RICHARD WAGSTAFF, MARY<br>GUGLIUZZA, BPD DOES I-12 in their<br>Capacity as Police Officers of the CITY OF<br>BUFFALO, BUFFALO POLICE<br>DEPARTMENT, MARK STAMBACH, and<br>MARK VAUGHN,<br><br>                                    Defendants. | **AMENDED COMPLAINT**<br><br>Civil Action No.<br>16-CV-321<br>(EAW/HBS) |

Plaintiff Josue Ortiz, by and through his attorneys, Hancock Estabrook, LLP and the Law

Offices of Wayne C. Felle, as and for his Amended Complaint, alleges as follows:

## INTRODUCTION

1.      This civil rights action seeks compensatory and punitive damages as a result of the

wrongful arrest, conviction, and imprisonment of Plaintiff Josue Ortiz ("ORTIZ") pursuant to 42

U.S.C. § 1983 and provisions of the United States Constitution as described herein.

2.      The wrongful arrest, conviction, and imprisonment of Ortiz was the direct and

foreseeable consequence of official policies, patterns, practices and customs that manifest a

failure to recognize basic principles of due process, constitutional rights and demonstrate

intentional, reckless disregard and indifference for human life and liberty.

3.      The Buffalo Police Department ("BPD"), an administrative arm of the City of

Buffalo ("CITY"), acting through the individual Defendants named herein who are employees

of the BPD, the BPD, and the supervisory officials of the BPD, operating with the authority of

law, failed to protect ORTIZ by allowing individuals who lacked the proper training and oversight to violate his constitutional rights, thereby causing ORTIZ profound physical and psychological injuries.

## JURISDICTION AND VENUE

4.      This civil rights action is brought pursuant to, *inter alia*, the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and other federal laws for relief from commission of intentional and tortuous acts.

5.      This Court has jurisdiction over said federal claims pursuant to 28 U.S.C. § 1331 and §1343(3) and (4), as they are brought to redress deprivations of rights, privileges, and immunities secured by the United States Constitution and by federal law.

6      Venue is proper in the Western District of New York, under 28 U.S.C. §1391(b), in that Defendants are located in this state and district, and a substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in  this district.

7.      That at all times hereinafter mentioned, and at the time of the occurrence hereinafter more particularly set forth, ORTIZ was a citizen of the United States residing in the City of Buffalo, County of Erie, State of New York.

8.      That at all times hereinafter mentioned, and at the time of the occurrences hereinafter more particularly set forth, Defendants, RICHARD WAGSTAFF ("WAGSTAFF"), MARY GUGLIUZZA ("GUGLIUZZA"), MARK VAUGHN ("VAUGHN), MARK STAMBACH ("STAMACH"), and BPD DOES 1-12 were residents of the County of Erie, State of New York.

9.      That at all times hereinafter mentioned, the BPD is a CITY department duly organized and existing under and by virtue of the laws of the City of Buffalo, County of Erie and State of New York.

10.     That at all times hereinafter mentioned the BPD was responsible for the policies, practices and customs of BPD and its officers.

11.     That at all times hereinafter mentioned the BPD was responsible for the hiring, training, supervision, retention, control and discipline of police officers and/or detectives within the office of the BPD, including specifically its investigators, officers and employees.

12.     That at all times hereinafter mentioned the BPD was the employer, supervisor and/or authority over the individual Defendants, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 , and through the authority vested in the BPD, said individual Defendants were authorized to and did act under the color of state law.

13.     That at all times hereinafter mentioned the BPD was responsible for ensuring that all officers within the BPD acted lawfully; followed constitutional due process safeguards; implemented and adhered to customs, practices and policies consistent with the pursuit of justice and presumption of innocence; and guaranteed all the rights and liberties provided for by the Constitution of the State of New York and the United States.

14.      Defendants WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 were hired, employed and acting on behalf of the BPD at all times herein and were acting in such capacity as an authorized officers and/or detectives of the BPD, under color of state law.

15.     Defendants, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 were at all times relevant to this Complaint duly appointed to lawfully enforce the laws of the State of New York and through the BPD having taken an oath to uphold the laws of the State of New York and the United States, thereby acting under color of state law.

16.     At all times relevant hereto and in all of their actions described herein, each Defendant was acting under the color of state law, county authority, state authority, statute, custom, practice or usage, and pursuant to their official capacity.

17      At all times relevant hereto and in all of their actions described herein, each Defendant acted intentionally and/or with reckless disregard and/or deliberate indifference and/or negligently.

18.     This action is brought on behalf of ORTIZ for violation of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 for false arrest and imprisonment, malicious prosecution, unreasonable search and seizure of his person, deprivation of due process, violation of his Fifth Amendment right against self-incrimination, his due process right to be free from the fabrication of evidence, and *Brady* violations.

## BACKGROUND AND FACTUAL ALLEGATIONS

19.     On November 16, 2004, ORTIZ was taken into police custody, subjected to custodial interrogation, arrest and incarceration through the actions, authority and power of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 operating under color of state law for the murders of Nelson "Lobo" Camacho and Miguel "Flaco" Camacho ("the Camacho Brothers").

{H3586328.1}                                    4

20.     ORTIZ's alleged "confession" on November 16, 2004 to the murder of the Camacho Brothers on November 11, 2004 was contrary to, and known to be contrary to, the undisputed facts surrounding the murders by Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12.

21.     On November 22, 2004 ORTIZ was ordered by Erie County Court to undergo a CPL 730 Competency exam.

22.     On November 29, 2004 the Director of the Office of Forensic Mental Health Services requested that the examination be delayed until ORTIZ could be stabilized with medication, and in his letter to the court of December 3, 2004, the Director noted that ORTIZ had presented to the Holding Center on November 17th in an apparently perplexed and frightened state; though responsive, his answers seemed irrelevant and he displayed a blunt affect. His demeanor vacillated from combative to silent.

23.     ORTIZ was transferred to the CPEP Unit at ECMC Hospital on November 23, 2004 where his behavior went from agitated to catatonic, with the hospital notes describing him as suicidal, bizarre, in need of physical and chemical restraints, irrational, illogical, preoccupied and psychotic; his history reflected chronic depression and both alcohol and substance abuse.

24.     As of early December, 2004, ORTIZ was diagnosed as suffering from a psychotic mental illness and was deemed to be "incompetent" to stand trial.

25.     The attending physician diagnosed ORTIZ on November 30, 2004 as having undifferentiated schizophrenia and found him to be "incompetent" to stand trial.

26.     During the time that ORTIZ was found to be incompetent to stand trial Defendant STAMBACH gave testimony to an Erie County Grand Jury regarding ORTIZ's false and coerced confession.

27.     On December 6, 2004, an Erie County Grand Jury indicted ORTIZ on four (4) counts of Murder in the First Degree, four (4) counts of Murder in the Second Degree, and one (1) count of Burglary in the First Degree.

28.     These charges involved the murder of the Camacho Brothers in the City of Buffalo, New York on November 11, 2004.

29.     On December 29, 2004 ORTIZ was discharged from the hospital and returned to the Holding Center.

30.     Evelyn Coggins, MD, saw ORTIZ on January 13, 2005 and January 21, 2005 and observed that while still unfocused, he appeared more relaxed and appropriate; that his thoughts were organized, but he complained of hearing voices saying, "it was you"; that he was no longer overtly suicidal; and she diagnosed him as suffering from psychosis, possible schizoaffective disorder/bipolar, but found that he was no longer incapacitated under Article 730.

31.     At a competency hearing held in May 2005, Dr. Coggins testified that: ORTIZ had professed his innocence of the charges and that he told her that he had nothing to do with the murders every time she spoke with her; opined that ORTIZ could have been suffering from a serious mental illness as of November 11, 2004 and may have been experiencing his first psychotic break from reality.

32.     On September 3, 2005, Ronnie Williams, a jailhouse informant claiming to have been housed with ORTIZ at the Holding Center, allegedly reported to Defendant STAMBACH that ORTIZ had admitted (in English) to killing the Camacho brothers.

33.     As a result of his Indictment ORTIZ was facing a sentence of life in prison if convicted.

34.     Given his emotional and mental condition ORTIZ could not cope with the idea of being behind bars the rest of his life.

35.     On March 22, 2006, ORTIZ pled guilty to two counts of Manslaughter 1st degree upon a sentence commitment of 25 years concurrent determinate and five years PRS.

36.     The Pre-Sentence Report ("PSR") states that: ORTIZ declined to make any statement to the Probation Department about the offenses and reported that "he had made a decision to withdraw his guilty plea;" that he reported a "history of *** mental health disorders" beginning in 2000 which included hearing voices and seeing people who were not there.

37.     At sentencing on June 16, 2006, defense counsel for ORTIZ advised the Court that on the day before counsel received a letter from ORTIZ indicating that he had changed his mind and wanted to withdraw his plea; ORTIZ told his counsel on June 16, 2006 that he wanted to take back his pleas because he did not commit the murders, and that on the day of his confession he was clearly and obviously under the influence of coke, pills, and marijuana and operating for several days without sleep.

38.     Notwithstanding this new information, on June 16, 2006, ORTIZ was sentenced to an indefinite term of twenty-five (25) years of imprisonment with five (5) years of post-release supervision, and was directed to the custody of the New York State Department of Corrections.

39.     As a direct result of the actions and constitutional violations of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 ORTIZ continued to be incarcerated from November 16, 2004 until his release from state prison on December 8, 2014.

40.     The wrongful arrest, prosecution, conviction, and incarceration of ORTIZ was the direct result of the unconstitutional and intentional, reckless disregard and deliberate indifference actions of Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 who:

a.      obtained a coerced, manipulated and false confession from ORTIZ whom they knew was suffering from obvious psychiatric illness and who had a history of serious mental health problems at the time of his interrogation and alleged confession;

b.      concealed, withheld and failed to investigate exculpatory and inconsistent evidence related to the commission of this crime;

c.      detained and arrested ORTIZ without regard to the witness identifications, and inconsistencies in ORTIZ's statements with the physical and forensic evidence;

d.      coerced, manipulated and obtained fabricated evidence from a known "jail house informant" to provide testimony reasonably known to be false;

e.      failed to properly investigate the commission of the murders and instead framed ORTIZ, a mentally compromised individual, for a crime he did not commit;

f.      failed to consider ORTIZ's significant cognitive impairment, bi-polar disorder and schizophrenia which contributed to a diminished and distorted capacity to comprehend everyday events and thereby allowed Defendants to deny and violate his constitutional rights.

{H3586328.1}                                8

41.     Rather than properly investigate the case Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 choose to remove or omit pieces of evidence that did not fit into their theory and ORTIZ's confession and to submit for prosecution a case known to have serious questions of credibility and trustworthiness, all contrary to the pursuit of justice.

42.     Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

43.     Disregarding ORTIZ's psychiatric disorders and obvious psychotic break from reality at the time of the investigation and interrogation, along with ignoring the substantial evidence of his innocence Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 obtained and relied upon a manufactured, coerced and patently false confession from ORTIZ.

44.     At the time of ORTIZ's detention, interrogation, arrest, indictment, prosecution, conviction and imprisonment there were significant inconsistencies between his purported "confession" and the objective physical evidence and initial witness descriptions of the perpetrators of the crime that should have caused Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 to reject, prevent and question the integrity of the criminal case against ORTIZ, but instead these Defendants removed, hid or altered the inconsistent investigation material which was clearly *Brady* material and failed,

refused and denied turning over the exculpatory information or evidence to criminal defense attorneys representing ORTIZ; the significant inconsistencies included but were not limited to the following:

a.      DNA evidence at the crime scene and on items recovered from the crime scene excluded ORTIZ as a participant in the murders;

b.      the statements of Vega and Osorio that exonerated ORTIZ;

c.      his confession contained no clear identification of his co-conspirators despite the police understanding from the outset that there were three (3) participants in the crime; no mention of the bat reportedly used and recovered by the police; identification of who kicked the door in or who had what weapon;

d.      his confession was demonstrably inaccurate in asserting the use of incorrect vehicles and multiple guns including an AK-47, a .9 mm and shotgun fired when ballistics only support an AK-47 or SKS; describing Flaco's handgun as "darker" than a cell phone when the gun found at the scene was chrome colored;

e.      from a prosecutorial perspective, ORTIZ's confession was a dead end insofar as it furnished no useful leads or basis to prosecute anyone else for the murders despite that right from the start the police had reason to believe that three people were involved and yet the police investigation and prosecution concluded with ORTIZ's confession and guilty plea;

f.      the inconsistent statements and testimony of cooperating witnesses and criminals, and evidence including vehicles used, weapons fired, whether the TV was on, the attempted removal of one victim's chain, location of victims, description of victim on cell phone, where the victims were shot and the actual killer would know the correct details; and

g.      contrary to ORTIZ's confession that identified only himself as the killer and his physical appearance as a man 6 feet 5 inches tall and weighing approximately 350 pounds at the time of his confession all other witnesses interviewed by Defendants several people observed three (3) suspects fleeing the scene, none of whom even remotely fit ORTIZ's physical description; the three suspects were all described as young looking, light skinned individuals wearing dark hoodies and ranging in height from 5' 5" to no more than 5' 11" and of average .

45.     While ORTIZ was incarcerated the US Attorney's Office for the WDNY, Federal Bureau of Investigation ("FBI"), and the New York State Police ("NYSP") were investigating the 10th Street and 7th Street gangs in Buffalo, and along with the examination of witness statements, physical evidence, the likelihood of a false confession and DNA evidence surrounding ORTIZ's conviction for the killings of the Camacho Brothers, these law enforcement officials determined that other individuals – not ORTIZ – were responsible for the murder of the Camacho Brothers.

46.     Testimony was presented to a Federal Grand Jury on multiple dates in 2011 and 2012, including testimony from ORTIZ.

47.     While the Federal Grand Jury proceedings were pending federal prosecutors met with ORTIZ on several occasions, including on September 6, 2012 at Attica State Prison.

48.     At this meeting after the prosecutors informed ORTIZ that people were claiming that he did not commit the murders and that many details of the crimes did not match up with what he had told Defendants in 2004, ORTIZ stated "OK, I'm innocent" and he advised the prosecutors that he confessed in 2004 because "(y)ou could say that I was scared *** but I didn't

know what I was scared of. Back then, I kinda lost my mind for awhile. *** When I spoke with the detectives I had been up for three days."

49.     On November 8, 2012 the Federal Grand Jury indicted Misael (Misa) Montalvo, Efrain (Cheko) Hidalgo, and Brandon Jonas for the murders of the Camacho Brothers.

50.     On November 9, 2012 this Court executed an Order authorizing the release of the Grand Jury minutes to the Erie County District Attorney's office, and on March 7, 2013 this Court authorized the release of the minutes to ORTIZ's original defense counsel in the state prosecution.

51.     On November 16, 2012, WDNY US Attorney William J. Hochul, Jr. and Assistant US Attorney Joseph M. Tripi ("AUSA Tripi") announced to the public that a three count superseding indictment was returned by a Federal Grand Jury on November 8, 2012 charging Efrain Hidalgo, Brandon Jonas and Misael Montalvo with two counts of discharging a firearm causing the death in furtherance of drug trafficking and violent crime for the murders of the Camacho Brothers.

52.     AUSA Tripi announced that based upon the independent investigation of Federal law enforcement officers, ORTIZ has "zero role in this offense" and requested that the Erie County District Attorney's Office release ORTIZ without further litigation or proceedings.

53.     The WDNY US Attorneys' Office announced ORTIZ's innocence publicly and in Federal Court, and AUSA Tripi stated publically that the clear and unequivocal evidence provided to the District Attorney's Office clearly established ORTIZ's innocence.

54.     Upon information and belief the evidence provided by the WDNY US Attorney's office to the District Attorney was provided to Defendants BPD, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12.

55.     Notwithstanding the foregoing, ORTIZ remained in the custody of the New York State Department of Corrections due to Defendants' intentional, reckless disregard and/or indifference to ORTIZ's constitutional rights.

56.     On or about April 23, 2013 ORTIZ filed a CPL 440 motion in Erie County Court to vacate his conviction based on, *inter alia*, newly discovered evidence, including the Federal indictment of other individuals for the murders; conflicts in the identification and physical evidence used by Defendants to arrest and convict him; his false, manipulated and coerced confession procured by the Defendants when ORTIZ was suffering from a severe psychotic break from reality, including schizophrenia, exacerbated by sleep deprivation, drug use and a limited command of the English language; DNA evidence excluding ORTIZ from the crime scene and from physical evidence connected with it; and his actual innocence.

57.     While the motion was pending and opposed by the Erie County DA's office and Defendants herein it was admitted by the DA's office that was never turned over to ORTIZ or his counsel the statements of Pedro Vega and Carlos Osorio that were contained in the prosecution file and exonerated ORTIZ in the murders prior to his guilty plea.

58.     The Vega and Osorio statements constituted *Brady* material.

59.     Defendants' failure to turn over those statements constituted a *Brady* violation which deprived him of the opportunity for effective use of the information in deciding whether to plead guilty.

60.     Notwithstanding the clear and convincing evidence of ORTIZ's wrongful conviction and incarceration, Defendants herein opposed or assisting in opposing ORTIZ's motion to vacate his c conviction.

61.     On February 7, 2014 Hon. Thomas J. Francyzk ordered a hearing to determine whether by clear and convincing evidence ORTIZ should have his conviction for the murders of the Camacho brothers vacated.

62.     At numerous hearing dates on the motion to vacate the Individual Defendants herein failed to appear as witnesses and continued to support opposition to the motion to vacate requiring that the motion proceedings be delayed and re-scheduled while presenting no evidence to rebut the motion to vacate or ORTIZ's actual innocence.

63.     As a direct result of Defendants' violations of ORTIZ's constitutional rights in 2004 and 2005 and their action in opposing his motion to vacate, ORTIZ continued to be incarcerated from November 16, 2012 until his release from prison on December 9, 2014 pursuant to a Court Order dated the same date.

64.     On January 20, 2015, the 2004 indictment in *People v. Ortiz*, Indictment No. 02630-2004 was dismissed, and such was formalized in an Order filed and entered on May 8, 2015.

65.     Defendants were acting under color of state law when they violated ORTIZ's constitutional rights and the protections and safeguards afforded to all United States citizens, including but not limited to violating ORTIZ's Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

66.     Defendants acted without probable cause because, *inter alia*, probable cause does not exist where, as here, ORTIZ's conviction was vacated.

67.     Defendants' acted in bad faith and illegally in arresting and convicting ORTIZ.

68.     ORTIZ's arrest, coerced confession, prosecution, conviction and imprisonment was the direct result of official policies, customs or usages maintained by Defendant BPD that caused ORTIZ to be subjected to a denial of his Federal constitutional rights.

69.     The policies, customs or usages maintained by Defendants include, but are not limited to:

a.      deliberate indifference to the constitutional rights of citizens including ORTIZ;

b.      deliberate indifference to suspects' mental, emotional and/or cognitive illnesses and/or impairments which could lead to a false, coerced and/or manipulated confession;

c.      solve a crime and clear a case as quickly as possible regardless of inconsistencies between a confession and the actual facts of the crime;

d.      subject suspects with mental and psychiatric illness and/or impairment to unreasonable, manipulative, coercive and unlawful interrogation, detention, arrest, prosecution and conviction;

e.      fail to provide to suspects and defendants and their counsel exculpatory *Brady* material;

f.      fail to disclose and removal from criminal files *Brady* information and evidence inconsistent to a confession;

g.      tolerate and condone police officers' acts of misconduct and constitutional violations;

h.      fail to properly train, educate and/or supervise police its employees, including the Individual Defendants herein, thereby allowing learning on the job through improper, undocumented and unconstitutional methods exhibiting an intentional and/or  reckless indifference and/or intentional disregard to the liberties and constitutional rights of United States citizens; and

i.      intentionally fail to accept uncontradicted proof from the US Attorneys' office and the FBI of the actual innocence of previously convicted defendants including ORTIZ.

71.     The supervisory and policy making officers of Defendant BPD directly participated in the constitutional violations alleged herein; failed to remedy the violations after being informed of them through a report or appeal; created policies, customs and usages alleged above that sanctioned conduct amounting to constitutional violations or allowed such policies, customs or usages to continue;  engaged in grossly negligent supervision of the subordinate employees names as Individual Defendants herein who committed the violations; or failed to act on information indicating that unconstitutional acts were occurring.

72.     The willful, intentional, illegal and wrongful actions of Defendants herein constitute outrageous conduct insofar as they were intended to and did cause ORTIZ to be imprisoned for over ten (10) years, without regard to his mental and psychiatric condition, with a likelihood of causing ORTIZ extreme and unnecessary physical and mental injuries and emotional distress.

73.     As a result of Defendants' unconstitutional acts ORTIZ has been wrongfully imprisoned for over 10 years of his life, and has and continues to live with the stigma and humiliation of being looked upon by others as a murderer.

74.     The injuries and damages sustained by ORTIZ arising from his unjust and illegal arrest, conviction, and imprisonment include, but are not limited to the following: personal injuries including beatings, attacks, stabbings; pain and suffering; severe mental anguish and emotional distress; emotional abuse by correctional officers; attempted suicide due to the physical and mental abuse sustained in prison; constant fear of being sexually assaulted, beaten, stabbed, burned or killed; activation, precipitation and aggravation of post-traumatic stress disorder; loss of income; humiliation, indignities and embarrassment; degradation, including the day to day indignities, embarrassment and degradation of prison life, and life as a convicted murderer; injury to reputation; permanent loss of natural psychological development; subjection to physical and verbal attacks and assaults; abuse and harassment; restrictions on all forms of personal freedom, including, but not limited to, daily loss of freedom in movement from place to place; the loss of choice and opportunity with respect to diet, sleep, personal and social contact; loss of educational and vocational opportunity; inadequate medical and/or psychiatric and/or psychological care by physicians and/or other medical personnel of his own choosing; athletic opportunity; personal fulfillment; sexual activity; family and social relationships; socializing, reading, television, movies, travel, enjoyment and expression; post-traumatic stress disorder, nightmares and insomnia, anxiety, panic attacks, depressive disorder, sleep disturbance, nightmares and dysthymia; the indignity and embarrassment of repeated strip searches;

75.     As a direct result of his unjust conviction and imprisonment and loss of freedom, in the future ORTIZ will: require ongoing medical and/or psychiatric and related treatment, therapy, rehabilitation and care into the indefinite future; fail to make social relationships; fail to

find suitable and rewarding employment; and be forced to rely on social services for his basic support and necessities.

76.     During his incarceration ORTIZ had numerous family members pass away, and was unable to attend their funerals, or even be aware of when they passed away; his grandmother passed away in 2009, and ORTIZ was not told of her passing until 2012, causing ORTIZ to live with the shame of his grandmother passing while she thought he was a murderer.

77.     Due to ORTIZ's unjust conviction and incarceration, his sense of reality, his self-confidence, his day to day living skills, his social skills, his trust in others, his trust in his own perceptions were severely affected, eroded and/or destroyed; he now feels helpless to control his life and has little hope for the future; it is unlikely that he will ever be able to live and manage his life independently.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983 – False Arrest and Imprisonment*

78.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-77 above.

79.      This section 1983 claim for false arrest is brought to vindicate ORTIZ's Fourth and Fourteenth Amendment right to be free from unreasonable seizures and seizures.

80.     As alleged above Defendants conduct was under color of state law, and deprived ORTIZ of a right, privilege, or immunity secured by the Constitution or laws of the United States.

81.     False arrest and false imprisonment are synonymous causes of action and are substantially the same in all relevant respects under Section 1983.

82.     Defendants intended to confine ORTIZ, ORTIZ was conscious of the confinement, did not consent to the confinement, and the confinement was not otherwise privileged.

83.     Defendants' acted without probable cause.

84.     As a direct result of Defendants' false arrest and imprisonment of ORTIZ he suffered the injuries and damages alleged herein.

## SECOND CAUSE OF ACTION
### *42 U.S.C. § 1983 – Malicious Prosecution*

85.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-84 above.

86.     ORTIZ's arrest, arraignment, indictment, conviction, and incarceration violated his right to be free of an unreasonable seizure of his person, i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty.

87.     ORTIZ was deprived of liberty consistent with his seizure.

88.     As a result of Defendants' action ORTIZ suffered a harm of constitutional proportions as required by law.

89.     Defendants' prosecution terminated in ORTIZ's favor.

90.     Defendants' acted without probable cause.

91.     As a direct result of Defendants' malicious prosecution of ORTIZ he suffered the injuries and damages alleged herein.

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983 – Fifth Amendment Right Against Self-Incrimination*

92.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-91 above.

93.     The Fifth Amendment's self-incrimination clause bars Defendants from ORTIZ's coerced and compelled confession in his criminal prosecution.

94.     Defendants' use of ORTIZ's coerced confession violated his Fifth Amendment rights.

95.     Defendants' acted without probable cause.

96.     As a direct result of Defendants' violation of ORTIZ's Fifth Amendment right against self-incrimination he suffered the injuries and damages alleged herein.

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983 – Due Process Right To Be Free From Fabrication Of Evidence*

97.     ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-96 above.

98.     ORTIZ has the right not to be deprived of liberty as a result of any government officer's fabrication of evidence.

99.     Defendants' fabricated evidence against ORTIZ through his coerced and false confession and the hiding and failure to produce exculpatory and inconsistent evidence exonerating ORTIZ of the murders.

100.    Defendants' acted without probable cause.

101.    As a direct result of Defendants' violation of ORTIZ's Due Process right to be free from fabrication of evidence he suffered the injuries and damages alleged herein.

## FIFTH CAUSE OF ACTION
### *42 U.S.C. § 1983 – Brady Violations*

102.   ORTIZ repeats, realleges and incorporates by reference the allegations of paragraphs 1-101 above.

103.   Defendants withheld and failed to produce to ORTIZ and his defense counsel before his plea exculpatory *Brady* material.

104.   ORTIZ's prosecution and the conviction in which Defendants' *Brady* violations occurred was determined to be invalid.

105.   The evidence at issue was favorable to the accused, was suppressed by Defendants either willfully or inadvertently, and ORTIZ was prejudiced as a result.

106.   Defendants' acted without probable cause.

107.   As a direct result of Defendants' Brady violations ORTIZ suffered the injuries and damages alleged herein.

**WHEREFORE**, Plaintiff, JOSUE ORTIZ, prays for judgment against all Defendants, and each of them, as follows:

1.   For an award of monetary damages against Defendants, jointly and severally, in an amount to be proven at trial;

2.   For punitive and exemplary damages against Defendants, jointly and severally, in an amount to be proven at trial;

3.   For costs, expenses, and attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable law;

4.   For such other and further relief as the Court deems just and proper.

{H3586328.1}                                    21

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues triable by a jury.

DATED: March 27, 2019   Respectfully Submitted,
          ***Attorneys for Plaintiff***

          HANCOCK ESTABROOK, LLP

          By: ___s/ Alan J Pierce_____
            Alan J. Pierce, Esq.

          100 Madison St., Suite 1500
          Syracuse, New York 13202
          Tel:  (315) 565-4500

           - and -

          LAW OFFICES OF WAYNE C. FELLE, ESQ.
          Wayne C. Felle, Esq.
          6024 Main St.
          Williamsville, New York 14221
          Tel: (716) 505-2700