UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

JOSUE ORTIZ,

                      Plaintiff,                          **DECISION AND ORDER**

                 v.                             1:16-CV-00321 EAW

RICHARD WAGSTAFF, MARY GUGLIUZZA,
BPD DOES 1-12, BUFFALO POLICE
DEPARTMENT, THE CITY OF BUFFALO,
MARK STAMBACH, and MARK VAUGHN,

                  Defendants.

———————————————————

## <u>INTRODUCTION</u>

Plaintiff Josue Ortiz ("Plaintiff") has sued Defendants for violations of his civil rights related to his arrest and conviction for the murders of Nelson and Miguel Camacho, and his subsequent exoneration. (Dkt. 1). Currently pending before the Court is a motion to dismiss or for summary judgment filed by defendants Richard Wagstaff ("Wagstaff"), Mary Gugliuzza ("Gugliuzza"), the Buffalo Police Department ("BPD"), BPD Does 1-12, Mark Stambach ("Stambach"), and Mark Vaughn ("Vaughn") (collectively "Defendants"). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Statement of Undisputed Material Facts (Dkt. 69-21), Plaintiff's response thereto (Dkt. 78-1), and the exhibits submitted by the parties.  Unless otherwise noted, these facts are undisputed.

On November 11, 2004, Nelson and Miguel Camacho were murdered while in the first-floor apartment at 879 Niagara Street, Buffalo, New York.  (Dkt. 69-21 at ¶ 2; Dkt. 78-1 at ¶ 2).  BPD officers responded to the scene and investigated the murders.  (Dkt. 69-21 at ¶ 3; Dkt. 78-1 at ¶ 3).

On November 16, 2004, two BPD officers brought Plaintiff to police headquarters. (Dkt. 69-21 at ¶ 5; Dkt. 78-1 at ¶ 5).  Plaintiff indicates that he was brought to police headquarters "as he stated he had information about the homicide."  (Dkt. 78-1 at ¶ 5).  The parties agree that Plaintiff spoke with Stambach, but dispute whether this was Plaintiff's only interaction with Stambach.  (Dkt. 69-21 at ¶ 5; Dkt. 78-1 at ¶ 5).

Plaintiff did not speak much English and Stambach did not speak Spanish, so BPD Officer Edwin Torres ("Torres") assisted with translation.  (Dkt. 69-21 at ¶¶ 7-8; Dkt. 78-1 at ¶¶ 7-8).  Plaintiff was informed of his *Miranda* rights in Spanish.  (Dkt. 69-21 at ¶ 9; Dkt. 78-1 at ¶ 9).  Defendants state that Stambach then asked Plaintiff "specific questions in which his answers could be verified with information known to someone present during the homicides" and that "Plaintiff claimed that he killed the Camacho [brothers] during this questioning."  (Dkt. 69-21 at ¶ 10).  Plaintiff indicates that he "has no recollection of the

events of his involvement with any members of the Buffalo Police Department ('BPD') in November 2004" and therefore cannot admit or deny this claim. (Dkt. 78-1 at ¶¶ 8, 10). Defendants further claim that Stambach typed up a statement reflecting his questions and Plaintiff's answers, that Torres "went through the statement with Plaintiff by reading it before Plaintiff was asked to sign it," and that Plaintiff initialed each page of the statement and signed the last page. (Dkt. 69-21 at ¶ 10). Again, Plaintiff denies any recollection of these events. (Dkt. 78-1 at ¶¶ 8, 10). Defendants have submitted to the Court a copy of the statement. (Dkt. 69-8). Plaintiff recognizes the initials and signature on the statement as his. (Dkt. 69-21 at ¶ 12; Dkt. 78-1 at ¶ 12). Plaintiff was arrested on November 17, 2004, but does not recall his arrest. (Dkt. 69-7 at 2; Dkt. 69-21 at ¶ 14; Dkt. 78-1 at ¶ 14).

Plaintiff was indicted by a grand jury for the murders of the Camacho brothers. (Dkt. 69-21 at ¶ 16; Dkt. 78-1 at ¶ 16). A *Huntley* hearing[1] was held and no constitutional violations warranting suppression of Plaintiff's statements were found. (Dkt. 69-21 at ¶ 17; Dkt. 78-1 at ¶ 17). On March 22, 2006, Plaintiff pled guilty to two counts of manslaughter in the first degree relating to the deaths of the Camacho brothers. (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18). Plaintiff recalls entering into the plea. (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18). Plaintiff subsequently attempted to withdraw his plea, but the trial court did not

---

[1] "In New York, a *Huntley* hearing is held if the prosecution intends to offer a defendant's confession. If the confession is challenged, a hearing is held in which the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant's statement was voluntary." *Thomas v. Lord*, 396 F. Supp. 2d 327, 335-36 (E.D.N.Y. 2005) (citing *People v. Huntley*, 15 N.Y.2d 72 (1965)).

permit him to do so.  (Dkt. 69-21 at ¶ 18; Dkt. 78-1 at ¶ 18).  On June 16, 2006, the trial court sentenced Plaintiff to 25 years imprisonment, with five years of post-release supervision.  (Dkt. 69-21 at ¶ 19; Dkt. 78-1 at ¶ 19).

During the course of an investigation into gangs operating in Buffalo, the Federal Bureau of Investigation and the United States Attorney's Office discovered that three other men—Misael Montalvo, Efrain Hidalgo, and Brandon Jonas (collectively the "Montalvo Defendants")—and not Plaintiff were responsible for the Camacho murders.  *Ortiz v. Case*, No. 16-CV-322, 2018 WL 8620414, at *2 (W.D.N.Y. May 18, 2018), *adopted*, 2019 WL 1236413 (W.D.N.Y. Mar. 18, 2019), *aff'd*, 782 F. App'x 65 (2d Cir. 2019).  In March 2013, United States District Judge Richard J. Arcara entered two Orders releasing federal grand jury minutes and material showing the involvement of the Montalvo Defendants in the Camacho murders to the Erie County District Attorney and Plaintiff's criminal counsel. *Id*.  On April 23, 2013, Plaintiff filed a motion to dismiss the indictment against him pursuant to N.Y. Criminal Procedure Law 440 (the "440 Motion"); despite initially being opposed by the Erie County District Attorney's Office, the 440 Motion was ultimately granted in May 2015.  *Id.*

## PROCEDURAL BACKGROUND

The instant action was filed on April 25, 2016.  (Dkt. 1).  On July 29, 2016, Plaintiff filed an affidavit of service indicating that he had served Defendants by leaving a copy of the summons and complaint with "Janet Poydock," the "legal steno clerk" for the City of

- 4 -

Buffalo Corporation Counsel.  (Dkt. 5).

Defendants filed their answer to the complaint on August 15, 2016.  (Dkt. 6).  In their answer, Defendants asserted a defense that Plaintiff had "fail[ed] to obtain personal jurisdiction based on insufficient service of process."  (*Id*. at 12).

On August 17, 2017, Defendants filed a motion to dismiss or for judgment on the pleadings.  (Dkt. 32).  Plaintiff cross-moved for leave to file an amended complaint.  (Dkt. 37).  On March 18, 2019[2], the Court entered a Decision and Order granting Plaintiff's cross-motion for leave to file an amended complaint except to the extent that Plaintiff sought to assert an abuse of process claim or any claims against the City of Buffalo and denying Defendants' motion for judgment on the pleadings as moot.  (Dkt. 56).

Plaintiff filed his amended complaint on March 27, 2019.  (Dkt. 59).  The amended complaint asserts five causes of action pursuant to 42 U.S.C. § 1983: (1) a claim for false arrest and false imprisonment; (2) a claim for malicious prosecution; (3) a claim for violation of Plaintiff's fifth amendment right against self-incrimination; (4) a claim for a violation of Plaintiff's due process right to be free from fabrication of evidence; and (5) a claim for violation of the Defendants' obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  Defendants filed their answer to the amended complaint on April 15, 2019.  (Dkt. 61).  In their answer to the amended complaint, Defendants again asserted insufficient service of process as a defense.  (*Id*. at 20-21).

---

[2]     This matter was originally assigned to a different district judge and was not transferred to the undersigned until February 11, 2019.  (*See* Dkt. 55).

Defendants filed the instant motion to dismiss and/or for summary judgment on April 24, 2020. (Dkt. 69). At the request of the parties (Dkt. 76), the Court set Plaintiff's response deadline for July 3, 2020, and Defendant's reply deadline for July 24, 2020. (Dkt. 77). Plaintiff filed a declaration and numerous exhibits on July 3, 2020 (Dkt. 78), but did not file his memorandum of law in opposition to Defendants' motion until July 7, 2020. (Dkt. 79). Defendants filed their reply on July 24, 2020. (Dkt. 81).

## DISCUSSION

Defendants' motion seeks numerous forms of relief. First, Defendants seek dismissal of Plaintiff's claims against Gugliuzza, Stambach, and Vaugh for failure to properly serve. (Dkt. 69-1 at 9-10). Second, Defendants seek dismissal of all claims against the BPD because it lacks the capacity to be sued. (*Id*. at 10-11). Third, Defendants seek dismissal of Plaintiff's false arrest and false imprisonment claim on the basis that they are time-barred. (Id. at 11-12). Fourth, Defendants seek dismissal of all of Plaintiff's claims against BPD Does 1-12 because Plaintiff has failed to take any action to further identify or substitute these defendants despite having been provided with voluminous discovery. (*Id*. at 12-13). Fifth, Defendants seek dismissal of all official capacity claims on the basis that they are duplicative of Plaintiff's dismissed claims against the City of Buffalo. (*Id*. at 13-14). Sixth, Defendants seek summary judgment on all of Plaintiff's claims on the basis that there was no violation of his constitutional rights because "ample probable cause to arrest, charge, and prosecute Plaintiff exist[ed] based upon his voluntary

statement to Stambach." (*Id.* at 14-20). Seventh, Defendants argue that they are entitled to summary judgment on the basis of qualified immunity. (*Id.* at 20-24). Finally, Defendants seek summary judgment on the basis that there is no proof they withheld exculpatory evidence. (*Id.* at 24-25). The Court considers each of these requests below.

## I.      Timeliness of Plaintiff's Memorandum of Law

As an initial matter, Defendants argue that Plaintiff's memorandum of law was not timely filed and should be disregarded. (Dkt. 80 at 2). As set forth above, at the request of the parties, the Court set Plaintiff's response deadline for July 3, 2020. (Dkt. 77). Plaintiff nonetheless did not file his opposing memorandum of law until July 7, 2020. (Dkt. 79). Plaintiff's memorandum of law was thus untimely.

It is true that in 2020, the Fourth of July holiday was observed on July 3rd, which was a Friday. However, Federal Rule of Civil Procedure 6(a), which provides for the extension of certain deadlines that fall on weekends and/or holidays, is inapplicable where "the Court set[s] a specific, stated deadline." *Miller v. City of Ithaca*, No. 3:10-CV-597, 2012 WL 1589249, at *1 (N.D.N.Y. May 4, 2012); *see also Violette v. P.A. Days, Inc*., 427 F.3d 1015, 1018 (6th Cir. 2005) ("The language of Rule 6(a) does not address situations where litigants are required to file papers on a particular, stated, calendar date."). Where, as here, the Court has set a specific deadline, the fact that it falls on a holiday does not result in an automatic extension.

Nevertheless, the Court will not, as Defendants urge, disregard Plaintiff's legal arguments on the basis of the untimely filing of his memorandum of law. The majority of Plaintiff's opposition papers were timely filed, and the Court in any event must assure itself that dismissal and/or summary judgment are warranted before granting such relief. *See Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) (holding that a court cannot grant a motion to dismiss "based on the insufficiency or absence of opposition"); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[E]ven when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

## II.     Insufficient Service of Process on Gugliuzza, Stambach, and Vaughn

The Court considers next Defendants' request for dismissal of the claims against Gugliuzza, Stambach, and Vaughn for failure to properly serve. Defendants contend that this is a matter of jurisdiction, but "the defenses of lack of personal jurisdiction and insufficiency of service of process . . . while often related, are not identical." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990). More specifically, "[q]uestions of personal jurisdiction go to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant," while "questions of sufficiency of service concern the manner in which service

has been made and not . . . the court's power to adjudicate defendant's rights and liabilities." *Id*. (quotations omitted).  In other words, "[l]ack of personal jurisdiction and insufficiency of process provide two different but interrelated grounds for dismissal. In particular, adequate service of process is a prerequisite for a court's exercise of personal jurisdiction: 'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" *Davis v. Mara*, 587 F. Supp. 2d 422, 424-25 (D. Conn. 2008) (quoting *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)).

Pursuant to Federal Rule of Civil Procedure 4(e), an individual within a judicial district of the United States may be served by "(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by "(2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Here, Plaintiff claims to have served Defendants by delivering a copy of the summons and complaint to a clerk of the City of Buffalo Corporation Counsel in 2016.  (Dkt. 5).  However, Defendants have submitted evidence to the Court that Gugliazza retired from employment with the

BPD in 2013, Stambach retired from employment with the BPD in 2006, and Vaugh retired from employment with the BPD in 2009.  (Dkt. 69-3 at ¶ 5).

Defendants contend that because Gugliuzza, Stambach, and Vaughn were no longer employed by the BPD in 2016, the City of Buffalo Corporation Counsel was not their authorized agent for service of process, and they were accordingly never properly served. (Dkt. 69-1 at 9-10).  In opposition, Plaintiff contends that the case law cited by Defendants is inapposite and notes that "in their Initial Disclosure required by Rule 26 dated February 24, 2017, . . . Defendants list the address of each of these Defendants as 'Buffalo Police Department, 74 Franklin Street, Buffalo, Ny 14202[.]'"  (Dkt. 79 at 12-13).

The Court agrees with Defendants that Plaintiff never properly effectuated service on Gugliuzza, Stambach, and Vaughn.  Neither Rule 4(e) nor the New York State law incorporated therein by reference allows for service by delivery to a defendant's former employer.  *See, e.g., Barnes v. City of New York*, No. 13-CV-7283 GBD JLC, 2015 WL 4076007, at *21 (S.D.N.Y. July 2, 2015) (service of process on two detectives at police headquarters insufficient service on defendant who had retired from the police department more than two years prior to the date of service), *adopted*, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015); *J&J Sports Prods., Inc. v. Byza Rest. Corp.*, No. 09-CV-1773 FB/ALC, 2010 WL 889259, at *6 (E.D.N.Y. Mar. 10, 2010)  (service on an individual present at the defendant's former place of business is not sufficient).

- 10 -

However, the Court finds that Gugliuzza, Vaughn, and Stambach have waived their right to assert a defense based on insufficient service of process by failing to include it in their motion for dismissal or judgment on the pleadings filed on August 17, 2017.  Federal Rule of Civil Procedure 12(b)(5) provides that a party may assert the defense of insufficient service of process by motion.  Rule 12(h)(1)(A) then provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances listed in Rule 12(g)(2)."  Rule 12(g)(2) in turn provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  The cumulative effect of these provisions of Rule 12 is that "the Rule 12(b)(5) defense of insufficient service of process is waived if not raised in a Rule 12 motion made by the party."  *Capital Ventures Int'l v. The Republic of Argentina*, No. 05 CIV. 4085 (TPG), 2010 WL 1257611, at *3 (S.D.N.Y. Mar. 31, 2010) (further explaining that this rule applies even where the defendant argues that the Court lacks personal jurisdiction based on insufficient service of process); *see also Hooker v. Fulton Cty., Georgia*, No. CIVA105CV982GET, 2006 WL 2617142, at *11 (N.D. Ga. Sept. 12, 2006) ("Rules 12(g) and 12(h)(1)(A) mandate a finding that the defenses of insufficiency of process and insufficiency of service of process have been waived because they were omitted from Defendants' prior Rule 12(c) motion[.]").

In this case, Defendants filed a motion in August 2017 for "judgment on the pleadings and dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and/or Federal Rule of Civil Procedure 12(c), for judgment on the pleadings" (Dkt. 32-7 at 2), but made no mention therein of an insufficient service of process defense.   Accordingly, Defendants have waived their insufficient service of process defense.

Moreover, even if Defendants had not waived this defense by failing to include it in their earlier Rule 12 motions, the Second Circuit has held that a delay in seeking dismissal on the basis of improper service may constitute a waiver "even where, as here, the defense was asserted in a timely answer.*" Datskow v. Teledyne, Inc., Cont'l Prod. Div*., 899 F.2d 1298, 1303 (2d Cir. 1990) (holding that "defendant's conduct bars it from complaining about the defective form of service.  Defendant attended the conference with the magistrate and participated in scheduling discovery and motion practice. Nothing was said about defective service of process.").  In particular, the defense of insufficient service of process can be waived, even if raised in an answer, where "several years and significant proceedings in the case have transpired in the interim[.]"  *Barclay v. Pawlak*, No. 3:09-CV-722 CSH, 2011 WL 577332, at *2 (D. Conn. Feb. 9, 2011); *see also Hamilton v. Atlas Turner, Inc*., 197 F.3d 58, 62 (2d Cir. 1999) (finding personal jurisdiction defense forfeited, notwithstanding the fact that it was included in the defendant's answer, where the defendant "participated in pretrial proceedings but never moved to dismiss for lack of

personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer").

The facts of this case overwhelmingly support a finding of waiver. In more than four years of litigation, Defendants took no action to assert an insufficient service of process defense beyond inclusion of a single sentence in their answers to the complaint and the amended complaint. Defendants failed to include this defense in their prior Rule 12 motion. As Plaintiff notes, Defendants' initial disclosures recite the address for the Buffalo Police Department as the address for Gugliuzza, Vaughn, and Stambach. (*See* Dkt. 78-14 at 1). Further, the statute of limitations has now expired, and the defect in service "could have been readily cured during the limitations period if defendant had promptly complained." *Datskow*, 899 F.2d at 1303. Under these circumstances, the Court finds that Defendants have forfeited their right to assert an insufficient service of process defense and denies their request for dismissal on this basis.

## III.   Claims Against the BPD

Defendants seek dismissal of all claims asserted against the BPD. It is well-established that under New York law—which applies here pursuant to Federal Rule of Civil Procedure 17(b)(3)—a police department is an administrative arm of a municipality that lacks the capacity to sue or be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."). Plaintiff conceded this fact in his opposition to

Defendants' motion for judgment on the pleadings.  (Dkt. 37-7 at 3 ("Plaintiff concedes that . . . the Buffalo Police Department is not a proper party in this action under New York law[.]")).  It was accordingly the understanding of the Court that Plaintiff did not intend to assert claims against the BPD in his amended complaint.  (*See* Dkt. 44 at 17 ("[P]laintiff would amend the Complaint to eliminate the Buffalo Police Department as a defendant.")).  Indeed, Plaintiff's proposed amended complaint did not list the BPD as a defendant in the caption, and expressly stated that the municipal defendant was "the City of Buffalo . . . acting through its administrative arm, the Buffalo Police Department."  (Dkt. 37-5 at 1); *see also* Dkt. 37-6 at ¶¶ 10-12 (redlined version of proposed amended complaint showing references to "Defendant BPD" being replaced with "Defendant CITY").

However, when he filed his amended complaint, Plaintiff filed a document that differs from the proposed amended complaint he had submitted to the Court.  Plaintiff included the BPD as a defendant in the caption of the amended complaint and inserted the BPD into paragraphs where it was not included in the proposed amended complaint.  To give just one example, paragraph 42 of the proposed amended complaint states that "Defendants WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of Brady v. Maryland, 373 U.S. 83 (1963)" (Dkt. 37-5 at ¶ 42), while

paragraph 42 of the amended complaint actually filed by Plaintiff states that "Defendants **<u>BPD</u>**, WAGSTAFF, GUGLIUZZA, VAUGHN, STAMBACH and BPD DOES 1-12 knowingly relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that made clear the innocence of ORTIZ in violation of Brady v. Maryland, 373 U.S. 83 (1963)" (Dkt. 59 at ¶ 42 (emphasis added)). It was, of course, patently improper for Plaintiff to file an amended complaint that was inconsistent with the proposed amended complaint the Court had approved and with his prior concession that he could not maintain his claims against the BPD.

Incredibly, in opposition to Defendants' motion, Plaintiff has made no mention of his previous concession that the BPD is not a proper party, nor proffered any explanation for the discrepancies between the proposed amended complaint approved by the Court and the amended complaint that was actually filed. Instead, Plaintiff asserts that "[t]his Court's March 2019 Order did not dismiss the BPD. . . . That is the law of the case and is determinative of this branch of the current motion." (Dkt. 79 at 13). This argument strains the bounds of reasonable advocacy. The Court did not dismiss claims against the BPD in its March 2019 Decision and Order because it granted Plaintiff leave to file an amended complaint that did not list the BPD as a defendant. In no way did the Court's prior Decision and Order suggest that Plaintiff could maintain an action against the BPD; he plainly cannot.

In any event, the "prudential and discretionary" doctrine of law of the case does not prevent a court from changing a ruling where there is a need to correct a clear error, *Laurent v. PriceWaterhouseCoopers LLP*, 963 F. Supp. 2d 310, 314 (S.D.N.Y. 2013), and would not prohibit the Court from dismissing claims against the BPD even had the Court previously permitted such claims to proceed.  To the extent Plaintiff is seeking to assert claims against the BPD, an entity he has conceded is not amenable to suit, those claims are dismissed.

## IV.  Statute of Limitations for False Arrest and False Imprisonment

Defendants seek summary judgment on Plaintiff's claim for false arrest and false imprisonment, on the basis that it is time-barred.  The Court agrees.

There is no dispute that for cases arising in New York, the statute of limitations for false arrest and false imprisonment claims under § 1983 is three years.  *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015).  However, the parties dispute when Plaintiff's false arrest and false imprisonment claim accrued.  Defendants argue that this claim accrued on December 16, 2004, when Plaintiff was arraigned.  (Dkt. 69-1 at 11).  Plaintiff contends that his false arrest and false imprisonment claim did not accrue until his conviction was vacated in 2015.  (Dkt. 79 at 14).

"[T]he accrual date of a § 1983 cause of action is a question of federal law[.]" *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  In *Wallace*, the Supreme Court addressed the precise issue that is currently before the Court.  There, the plaintiff had been arrested on

January 19, 1994, in connection with a murder. *Id.* at 386. "After interrogations that lasted into the early morning hours the next day," the plaintiff confessed to the murder. *Id.* The plaintiff was convicted of first-degree murder and sentenced to 26 years in prison. *Id.* However, on direct appeal, the state courts determined that his arrest had been illegal and remanded for a new trial. *Id.* at 386-87. The charges against the plaintiff were ultimately dropped on April 10, 2002. *Id.* at 387. The plaintiff filed a federal lawsuit on April 2, 2003, asserting a § 1983 claim for false arrest and false imprisonment. *Id.*[3] The Supreme Court held that the plaintiff's claim had accrued "when legal process was initiated against him" and that the statute of limitations had thus expired. *Id.* at 390-91.

The *Wallace* court expressly rejected the argument that Plaintiff makes here— namely, that *Heck v. Humphrey*, 512 U.S. 477 (1994), "compels the conclusion that his suit could not accrue until the State dropped its charges against him." *Id.* at 392. As the *Wallace* court explained, *Heck* "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." *Id.* at 393. However, the *Wallace* court found that it would be a "bizarre extension of *Heck*" to apply it to a false arrest and false imprisonment claim, and further expressly held the statute of limitations for such a claim is not tolled pursuant to *Heck* once a conviction is obtained. *Id.* at 393-95.

---

[3]     As the *Wallace* court explained, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." 549 U.S. at 388.

*Wallace* compels the Court to reject Plaintiff's argument that his false arrest and false imprisonment claim did not accrue until his conviction was overturned in 2015. Plaintiff relies on *Covington v. City of New York*, 171 F.3d 117 (2nd Cir. 1999) and its progeny in support of his argument.  However, "[u]nfortunately for [Plaintiff], *Covington* has been overruled by the Supreme Court's decision in *Wallace*[.]"  *Jones v. City of New York*, No. 13-CV-929 (ALC), 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016); *see also Fonvil v. Cty. of Rockland*, No. 17 CV 2957 (VB), 2018 WL 357309, at *4 (S.D.N.Y. Jan. 9, 2018) ("*Covington* was overruled in 2007, by *Wallace*[.]"); *De Santis v. City of New York*, No. 10 CIV. 3508 NRB, 2011 WL 4005331, at *4 (S.D.N.Y. Aug. 29, 2011) ("Although [the plaintiff] is correct that previously, under the law of this Circuit, accrual of a false arrest claim could have been deferred in certain circumstances, that is no longer the case since the Supreme Court's 2007 decision, *Wallace* . . ., overruled the aspect of *Covington* on which he relies.").  Indeed, in *Watson v. United States*, 865 F.3d 123 (2d Cir. 2017), the Second Circuit noted that the "proper framework" for ascertaining the accrual of a false imprisonment claim is *Wallace*.  *Id*. at 130-31.

For all these reasons, the Court finds that Plaintiff's false arrest and false imprisonment claim is barred by the statute of limitations and must be dismissed.

## V.  Claims Against BPD Does 1-12

In both his original and amended complaint, Plaintiff named John Doe defendants—specifically, BPD Does 1-12.  "Where a plaintiff names 'John Doe' as a placeholder

defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations period." *Abreu v. City of New York*, 657 F. Supp. 2d 357, 363 (E.D.N.Y. 2009). Defendants seek dismissal of the Claims against BPD Does 1-12 on the basis of Plaintiff's failure to identify them.

Plaintiff contends in opposition to Defendants' motion that the BPD Does were identified during discovery. (Dkt. 79 at 16). Plaintiff specifically states that "Officer Edwin Torres and Detective James Longergan are two of the John Does in this action." (*Id.*). However, Plaintiff does not identify any of the other 10 BPD Doe defendants. Further, Plaintiff has never moved to amend his complaint to name Torres or Longergan as defendants, nor have those individuals ever been served.

Nor could Plaintiff successfully move to amend his complaint to name Torres or Longergan at this stage of the proceedings. "John Doe substitutions [after expiration of the statute of limitations] . . . may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quotation omitted). Here, the only provision of Rule 15(c) that could possibly allow for a John Doe substitution is Rule 15(c)(1)(A), which allows for such substitution if "the law that provides the applicable statute of limitations allows relation back."[4] More specifically,

---

[4]     Rule 15(c)(1)(B) does not apply here because it governs the assertion of new claims against existing defendants, and the Second Circuit has expressly ruled that Rule 15(c)(1)(C) does not apply "where the newly added defendants were not named originally because the plaintiff did not know their identities," *Hogan*, 738 F.3d at 517.

because "§ 1983 derives its statute of limitations from state law," Rule 15(c)(1)(A) allows for a John Doe substitution where the "more forgiving principle of relation back" set forth in section 1024 of the New York Civil Practice Law and Rules ("CPLR") is satisfied. *Hogan*, 738 F.3d at 518 (internal quotation marks omitted). CPLR 1024 allows for *nunc pro tunc* substitution of John Doe parties if two requirements are satisfied: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* at 519 (citations and quotations omitted and second alteration in original).

Here, as Defendants correctly explain in their motion papers, the amended complaint does not identify the BPD Does "in any meaningful manner." (Dkt. 69-1 at 13). In particular:

> No specific description is provided that apprises of the intended defendant. No physical description is provided of these individuals. There is no factual allegation contained in the Amended Complaint other than "officers and/or detectives of the BPD." At the time of the filing of Plaintiff's Amended Complaint, considerable paper discovery had been provided by the Defendants in this action as well as his separate action, Ortiz v. Case, Index No. 1:16-cv-00322. Plaintiff took no action to further identify BPD Does 1-12 despite the availability of voluminous BPD files. Moreover, there is no specific factual allegation regarding the individual conduct of BPD Does 1-12 to aid in their identification either.

(*Id.*). Accordingly, the requirements of CPLR 1024 are not satisfied, and Plaintiff therefore has no available mechanism to seek substitution of any of the BPD defendants.

- 20 -

In sum, Plaintiff has not sought to amend his complaint to substitute any of the BPD Doe defendants, nor could he successfully do so at this stage of the litigation. Dismissal of the claims against these defendants is warranted. *See Gleeson v. Cty. of Nassau*, No. 15-CV-6487AMDRL, 2019 WL 4754326, at *12 (E.D.N.Y. Sept. 30, 2019) (dismissing claims against John Doe defendants where "even though they learned the identities of [the relevant individuals] through document discovery, . . . the plaintiffs have not sought to amend the complaint to name the 'John Doe' [defendants]" because the statute of limitations had run and there was no basis for relation back); *Dewitt v. Home Depot U.S.A., Inc.*, No. 10-CV-3319 KAM, 2012 WL 4049805, at *1 (E.D.N.Y. Sept. 12, 2012) (dismissing claims against John Doe defendants who had been identified during discovery where the plaintiff "never moved to amend his complaint to add these individual defendants and never served the complaint on these individual defendants").

## VI.   **Official Capacity Claims**

Defendants seek dismissal of all claims asserted against the individual defendants in their official capacities, because they are duplicative of Plaintiff's insufficient claims against the City of Buffalo. (Dkt. 69-1 at 13-14). The Court agrees that Plaintiff's claims against the individual defendants in their official capacities must be dismissed. "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself. Therefore, in order to assert a viable claim against a municipal employee in his official capacity, the plaintiff must have a viable *Monell* claim

against the municipality." *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 671 (D. Conn. 2008). In this case, the Court has already concluded that Plaintiff cannot maintain a *Monell* claim against the City of Buffalo. (Dkt. 56 at 11-14). Plaintiff thus also cannot maintain his official capacity claims; they must be dismissed.

## VII.   Defendants' Request for Summary Judgment as to All Remaining Claims

Defendants next contend that they are entitled to summary judgment on Plaintiff's remaining claims, arguing that "there was no Constitutional violation because ample probable cause to arrest, charge, and prosecute Plaintiff exist based upon his voluntary statement to Stambach." (Dkt. 69-1 at 14). Defendants further argue that "the record is devoid of any evidence that Wagstaff, Gugliuzza, or Vaughn took any action that violated Plaintiff's Constitutional rights." (*Id*. at 16).

### A.   Legal Standard for Summary Judgment Motion

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

- 22 -

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.    Claims Against Defendants Other Than Stambach

Defendants argue that "[t]he record is devoid of any evidence that Wagstaff, Gugliuzza, or Vaughn took any action that violated Plaintiff's Constitutional rights."  (Dkt.

69-1 at 16). The Court agrees, and accordingly finds that Wagstaff, Gugliuzza, and Vaughn are entitled to summary judgment.

A party seeking summary judgment may meet its burden by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (citation omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."). At that point, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." *PepsiCo*, 315 F.3d at 105 (quotation omitted).

Here, Defendants have pointed out to the Court that there is no evidence that Wagstaff, Gugliuzza, or Vaughn played any role in the taking of Plaintiff's statement, Plaintiff's arrest, or the initiation of the prosecution against Plaintiff. In opposition, Plaintiff has failed to come forward with any specific facts tying these defendants to the alleged violation of his constitutional rights. To the contrary, Plaintiff's memorandum of law sets forth only the following information regarding these defendants: (1) on the day of the Camacho murders, Gugliuzza took a statement from Jeilyn Rosario, Nelson Camacho's girlfriend, indicating that Misael Montalvo "wanted to kill or hurt Nelson or Miguel

- 24 -

Camacho," and this information was in the BPD's homicide file before Plaintiff was arrested; and (2) Vaughn participated in an interview of Plaintiff on November 15, 2004, at Buffalo General Hospital, after which "the detectives left Plaintiff, not considering him to be either a suspect or a witness, and advised him that he should contact them after his release from the hospital if he had any further information." (Dkt. 79 at 4, 6 (quotation and alterations omitted)).   Notably, Plaintiff's memorandum of law is devoid of any information regarding the role Wagstaff allegedly played in the claimed violations of Plaintiff's constitutional rights.[5]

Plaintiff has not come forward with specific facts supporting any of his claims against Wagstaff, Gugliuzza, or Vaughn.  These defendants' involvement in the BPD's investigation of the Camacho murders prior to Plaintiff's giving of his statement and subsequent arrest and prosecution would not permit a reasonable jury to conclude that they were liable to Plaintiff on any of his claims.  Wagstaff, Gugliuzza, or Vaughn are entitled to summary judgment.

---

[5]       Defendants have provided to the Court a copy of the state court decision granting Plaintiff's 440 Motion.  (Dkt. 69-20).  This decision indicates that Wagstaff was one of the BPD officers who responded to the scene of the Camacho murders and that he interviewed a witness who reported having seen "three guys . . . with something in their hand." (*Id.* at 7).

C.      **Remaining Claims Against Stambach**

The Court turns next to Plaintiff's malicious prosecution claim, due process fabrication of evidence claim, fifth amendment self-incrimination claim, and *Brady* violation claim against Stambach.

1.      **Malicious Prosecution Claim**

The bulk of Defendants' arguments relate to the malicious prosecution claim, and so the Court considers it first.  "To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997).

Defendants make numerous arguments as to why Plaintiff's malicious prosecution claim must fail.  First, Defendants argue that  Plaintiff's malicious prosecution claim is barred in its entirety by the existence of probable cause.  Second, Defendants argue that "Plaintiff cannot show that the Defendants initiated or continued the criminal proceeding against the Plaintiff because the independent actions of the District Attorney's Office while charging Plaintiff, later at the *Huntley* hearing, and during the course of the criminal prosecution broke any causal chain."  (Dkt. 69-1 at 18).  Third, Defendants argue that Plaintiff is barred by the principles of *res judicata* and collateral estoppel from challenging the voluntariness of his statement based on the *Huntley* hearing.  Finally, Defendants

contend that Plaintiff cannot establish malice.  The Court has considered these arguments below and finds that they do not establish Stambach's entitlement to summary judgment on Plaintiff's malicious prosecution claim.

As to Defendants' probable cause argument, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (quotations and citation omitted).  This presumption "may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 162 (quotation omitted).  Defendants contend that the grand jury indictment in this case creates a presumption of probable cause and that Plaintiff cannot rebut that presumption.  (Dkt. 17-18).  The Court disagrees.

"[A] police officer's fabrication and forwarding to prosecutors of known false evidence" is the sort of bad faith misconduct that can rebut the presumption of probable cause flowing from a grand jury indictment. *Manganiello*, 612 F.3d at 162.  Here, Plaintiff has pointed to evidence from which a rational jury could conclude that Stambach knew that the confession he had extracted from Plaintiff was false and that he nonetheless used it to set Plaintiff's prosecution in motion.  In particular, Plaintiff has pointed to evidence supporting the conclusion that:  (1) Stambach either was present at the interview of Plaintiff at Buffalo General Hospital on November 15, 2004, or had at a minimum been informed

- 27 -

of the details of that interview (Dkt. 69-9 at 61; Dkt. 69-12 at 56-57)[6]; (2) Stambach questioned Plaintiff alone, without *Miranda* warnings, for 30-40 minutes before calling in a translator, despite the fact that Plaintiff spoke only broken English, during which time he specifically asked Plaintiff about the details of the Camacho murders and Plaintiff reported that he was afraid someone was trying to kill him (Dkt. 69-6 at 182-83, 193-94); (3) Stambach was aware that there were other suspects in the Camacho murders, but did not pull the homicide file or review the many witness statements contained therein before taking Plaintiff's confession (*id.* at 143-48, 212-14); (4) there were material inconsistencies between Plaintiff's confession and the facts known to the BPD about the Camacho murders (Dkt. 78-4 at 106-07); and (5) Stambach had no evidence "whatsoever" to link Plaintiff to the crime apart from his confession (Dkt. 69-6 at 247-48; *see also* Dkt. 78-4 at 68).  A reasonable factfinder could conclude based on this evidence that Stambach knew that Plaintiff's confession was false and was the product of his psychiatric condition, yet nonetheless chose to procure a statement from Plaintiff setting forth that false confession and used that statement to initiate the criminal prosecution of Plaintiff, which could in turn support a finding in Plaintiff's favor on his malicious prosecution claim.  *See Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's

---

[6]    Plaintiff had been taken to Buffalo General Hospital for psychiatric evaluation, and had reported to the staff that he had information about the Camacho murders and was in fear for his life.  (Dkt. 69-12 at 59-59).  He acted "very unsettled," "jerky," "jittery," and "out of sorts" during the interview.  (*Id.* at 48, 60).

constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."); *Pizarro v. City of New York*, No. 14-CV-507 KAM VVP, 2015 WL 5719678, at *5 (E.D.N.Y. Sept. 29, 2015) (finding the plaintiff's claim that the defendants had coerced and falsified his confession sufficient to rebut the presumption of probable cause flowing from grand jury indictment).

Defendants' argument that Stambach had probable cause to arrest Plaintiff based on his statement (*see* Dkt. 69-1 at 18) is misplaced. "The Second Circuit has warned against 'conflating probable cause to arrest with probable cause to believe that plaintiff could be successfully prosecuted. Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim.'" *Pizarro*, 2015 WL 5719678, at *4 (alterations omitted and quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999)). As discussed above, a reasonable jury could find on the evidence before the Court that Stambach knew that Plaintiff's confession was false. A known false confession does not provide probable cause to believe a criminal prosecution would be successful. *Id*. at *5; *see also Ricciuti*, 124 F.3d at 131 (2d Cir. 1997) (finding district court erred in granting summary judgment on malicious prosecution claim as to defendant where "a jury could find that [the defendant] knowingly took part . . . in the distribution of a confession he knew to be false, and that he . . . lied about the circumstances surrounding [the plaintiff's] arrest").

Defendants' contention that Stambach did not initiate the criminal prosecution fares no better. To satisfy this element of a malicious prosecution claim, a defendant must "play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello*, 612 F.3d at 163 (alteration and citation omitted). Importantly, "[a] jury may permissibly find that a defendant initiated a prosecution where he 'filed the charges' or 'prepared an alleged false confession and forwarded it to prosecutors.'" *Id.* (original alterations omitted and quoting *Ricciuti*, 124 F.3d at 130). Here, as discussed above, a reasonable jury could find that Stambach forwarded a confession he knew to be false to the prosecutors. Further, it was Stambach who signed the Felony Complaint on November 17, 2004, accusing Plaintiff of murder in the second degree. (Dkt. 78-12 at 32).

Nor can the Court find as a matter of law that the causal chain was broken by the prosecutors' actions. "[I]f the prosecution relied on independent, untainted information to establish probable cause, a complaining official will not be responsible for the prosecution that follows." *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016). Where this is the case, "the chain of causation . . . is broken by the intervening exercise of independent judgment." *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999). However, the prosecutors cannot serve as a superseding cause where they relied on evidence fabricated by the defendant. *See Bermudez v. City of New York*, 790 F.3d 368, 375 (2d Cir. 2015). Inasmuch as a reasonable jury could find that the prosecutors relied on a false confession extracted

from Plaintiff by Stambach, they could also find that Stambach's actions were the cause of Plaintiff's prosecution.

*Res judicata* and/or collateral estoppel also do not bar Plaintiff's claims. "Principles of collateral estoppel may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding. The federal court must, however, apply the collateral estoppel rules of the state which rendered the judgment." *Owens v. Treder*, 873 F.2d 604, 607 (2d Cir. 1989) (citation omitted). "Under New York law, the doctrine of issue preclusion only applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) (footnote omitted).

Defendants claim that Plaintiff should be barred from challenging the circumstances of his confession because those issues were fully litigated during his criminal proceedings. However, "Defendants' interpretation of collateral estoppel seems plainly wrong—a vacated criminal conviction cannot have preclusive effect." *Dukes v. City of Albany*, 1:17-CV-865, 2018 WL 722414, at *5 (N.D.N.Y. Feb. 6, 2018) (collecting cases). "Neither the verdict of a jury nor the findings of a court in a prior action upon the precise point involved in a subsequent action between the same parties constitute a bar, unless followed by a judgment based thereon, or into which the verdict or findings entered." *Peterson v. Forkey*, 50 A.D.2d 774, 774 (1st Dep't 1975) (quoting *Rudd v. Cornell*, 171 N.Y. 114, 128-29

(1902)).  "The judgment is the bar, and not the preliminary determination of the court."

*Rudd*, 171 N.Y. at 129.  "Thus, when no order or final judgment has been entered on a

verdict or decision, <u>or when the judgment is subsequently vacated</u>, collateral estoppel is

inapplicable."  *Church v. N.Y. State Thruway Auth.*, 16 A.D.3d 808, 810 (3d Dep't 2005)

(emphasis added); *see Ruben v. Am. & Foreign Ins. Co.*, 185 A.D.2d 63, 65 (4th Dep't

1992) ("Because the judgment was vacated, the jury verdict lacks finality and cannot be

given collateral estoppel effect."); *see also Kogut v. County of Nassau*, No. 06-CV-6695

(JS)(WDW), 2009 WL 5033937, at *10 (E.D.N.Y. Dec. 11, 2009) (holding that the

principles of collateral estoppel did not bar a challenge to the voluntariness of a confession,

even though that issue had been necessarily decided in the prior action, where the plaintiff

had subsequently been acquitted (citing *Boston Firefighters Union Local 718 v. Boston*

*Chapter NAACP, Inc.*, 468 U.S. 1206, 1211 (1984) ("[A] vacated judgment, by definition,

cannot have any preclusive effect in subsequent litigation."))).  In other words, because

Plaintiff's judgment of conviction has been vacated, he is not barred from challenging the

circumstances under which his confession was obtained.

Finally, a rational jury could find that Stambach acted with malice.  "The absence

of probable cause 'raises an inference of malice sufficient for a claim of malicious

prosecution to withstand summary judgment.'"  *Bailey v. City of New York*, 79 F. Supp. 3d

424, 451 (E.D.N.Y. 2015) (quoting *Ricciuti*, 124 F.3d at 131).  Further "[f]alsifying

evidence is sufficient to show malice." *Id.* The Court's conclusions as to Defendants'

probable cause argument also apply to this aspect of a malicious prosecution claim.

For all these reasons, the Court concludes that Stambach is not entitled to summary

judgment on Plaintiff's malicious prosecution claim against him.

### 2.   Claim for *Brady* Violation

Court next considers Plaintiff's *Brady* violation claim against Stambach.

Defendants argue that there is no evidence in the record to show that Stambach (or any of

the other defendants) withheld *Brady* information. (Dkt. 69-1 at 24). In opposition,

Plaintiff points to two witness statements that he claims were never provided to his criminal

defense attorneys. (Dkt. 79 at 26).

"Police officers can be held liable for *Brady* due process violations under § 1983

if they withhold exculpatory evidence from prosecutors." *Bermudez*, 790 F.3d at 376 n. 4

(2d Cir. 2015). "[A] police officer is only liable for *Brady* violations under § 1983 when

he intentionally suppresses exculpatory evidence. . . . [F]or purposes of § 1983, a police

officer cannot be said to have suppressed *Brady* material that is not in his sole possession,

and which is readily available to the prosecutor." *Valentin v. City of Rochester*, No. 11-

CV-6238 CJS, 2018 WL 5281799, at *13 (W.D.N.Y. Oct. 24, 2018) (quotations and

original alteration omitted), *aff'd*, 783 F. App'x 97 (2d Cir. 2019). In this case, there is no

evidence before the Court that Stambach was in sole possession of the witness statements

that Plaintiff claims were not turned over, nor is there any evidence before the Court that

these statements were withheld from the prosecution, as opposed to defense counsel. *See id.* ("[P]olice officers cannot be liable for a *Brady* violation where the prosecutor is aware of the allegedly-withheld *Brady* material."). Moreover, fabrication of evidence is not redressable as a *Brady* violation. *See Myers v. Cty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011). On the record before the Court, no reasonable jury could find in favor of Plaintiff on his claim that Stambach violated *Brady*. Accordingly, Stambach is entitled to summary judgment on this claim.

### 3. Fabrication of Evidence Claim and Violation of Right Against Self-Incrimination Claim

As to Plaintiff's claims against Stambach for fabrication of evidence and violation of the right against self-incrimination, the Court notes that Defendants have offered no arguments specific to these claims. Further, while Defendants have argued generally that there were no constitutional violations because of the presence of probable cause, lack of probable cause is not an element of either of these claims. *See Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016) ("The district court's statement that independent probable cause rules out the possibility that fabricated evidence proximately caused the deprivations stemming from [the plaintiff's] prosecution is not, as a general matter, correct."); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (the elements of a fabrication of evidence claim are that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or

property as a result"); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) ("[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding.").  Because Defendants have failed to address the elements of these claims, they have failed to establish that Stambach is entitled to summary judgment thereon.

## VIII.  <u>Qualified Immunity</u>

Finally, the Court turns to Defendants' qualified immunity argument.  "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The sole argument Defendants offer in support of their assertion that they are entitled to qualified immunity is that there was "arguable probable cause."  (Dkt. 69-1 at 23-24).  However, as noted above, absence of probable cause is not an element of either a fabrication of evidence claim or a claim for violation of the right against self-incrimination. Accordingly, the existence of "arguable probable cause" would not, in any event, establish that Stambach was entitled to qualified immunity on these claims.

As to Plaintiff's malicious prosecution claim, the Second Circuit has held that no reasonable officer could believe it lawful to misrepresent evidence to the prosecution. *Managaniello*, 612 F.3d 149. Defendants' qualified immunity argument necessarily depends on the factual conclusion that Stambach did not knowingly procure a false statement of confession from Plaintiff and then pass that false statement on to the prosecution, but the facts as to Stambach's conduct are disputed and must be determined by a jury. Accordingly, summary judgment on the basis of qualified immunity is not warranted.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss and/or for summary judgment. (Dkt. 69). Specifically, the Court denies Defendants' request that it dismiss Plaintiff's claims against Gugliuzza, Stambach, and Vaughn due to insufficient service of process, but grants Defendants' request that it dismiss Plaintiff's claims against the BPD and BPD Does 1-12, as well as Plaintiff's claim for false arrest and false imprisonment. The Court further denies Defendants' request for summary judgment as to Plaintiff's claims for malicious prosecution, fabrication of evidence, and violation of the right against self-incrimination against Stambach, but grants Defendants' request for summary judgment as to Plaintiff's claim for a *Brady* violation against Stambach and as to all remaining claims against Wagstaff, Gugliuzza, and Vaughn.

The Clerk of Court is instructed to terminate the BPD, BPD Does 1-12, Wagstaff, Gugliuzza, and Vaughn as defendants in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 26, 2021
       Rochester, New York

- 37 -