UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

                          Plaintiff,

    vs.                                    Civil Action No.
                                            16-CV-321
MARK STAMBACH,                    (EAW/JR)

                        Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN

## OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

Respectfully Submitted:
*Attorneys for Plaintiff*

LAW OFFICES OF WAYNE C. FELLE, P.C.
Wayne C. Felle, Esq.
6024 Main Street
Williamsville, NY 14221
Tel: (716) 505-2700

- and -

HANCOCK ESTABROOK, LLP
Alan J. Pierce, Esq.
100 Madison St., Suite 1800
Syracuse, New York 13202
Tel: (315) 565-4546

Dated: April 1, 2022

{H4716803.1}

## TABLE OF CONTENTS

**POINT I:   EVIDENCE OF OTHER LAWSUITS AGAINST DEFENDANT FOR POLICE MISCONDUCT THAT RESULTED IN THE CONVICTIONS BEING VACATED IS ADMISSIBLE**…………2

**POINT II:  THE COURT SHOULD NOT PRECLUDE POST-SENTENCING EVIDENCE**……………………………………….6

**POINT III: THE COURT SHOULD NOT PRECLUDE EVIDENCE OF BPD'S POLICY CHANGE REQUIRING THE VIDEO RECORDING OF WITNESS INTERVIEWS UNDER FED. R. EVID. 407**……………………………………………………7

**POINT IV: PLAINTIFF SHOULD BE ALLOWED TO REFER TO DEFENCE COUNSEL AS "CITY ATTOTNEYS" OR THE COURT SHOULD INSTRUCT THE JURY THAT THE CITY OF BUFFALO IS DEFENDING AND INDEMNIFYING DEFENDANT**…………………………………………………….9

**POINT V:  PLAINTIFF SHOULD NOT BE PRECLUDED FROM OFFERING EXPERT TESTIMONY**………………………….. 9

**CONCLUSION**……………………………………………………….14

## POINT I: EVIDENCE OF OTHER LAWSUITS AGAINST DEFENDANT FOR POLICE MISCONDUCT THAT RESULTED IN THE CONVICTIONS BEING VACATED IS ADMISSIBLE

Defendant seeks to preclude the admission or discussion of three other (Defendant calls them "unrelated") lawsuits in which Defendant was named as a defendant under Federal Rules of Evidence 403 and 404(b)(1). These three are the *Epps, Dixon*, and *Peters/DeJac* cases.

Notably, Rule 403 presumes that the evidence in question is relevant and probative, and provides:

> Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons
>
> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
>
> Rule 404(b) states:
>
> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Moreover, Defendant will be a witness at this trial. Both parties intend to call him as a witness. Rule 404(a) provides:

(a)   Character Evidence.

(1)   Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

\*\*\*

(3)   Exceptions for a Witness. Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

Rule 607 provides that "any party, including the party that called the witness, may attack the witness's credibility."  Rule 608 deals with a witness's character for truthfulness or untruthfulness, and Rule 609 addresses impeachment by evidence of a criminal conviction.

The *Epps* Complaint (1:19-cv-00281-LJV-LGF Document 1 Filed 03/01/19) reads like this case. It alleges that was Epps was wrongfully convicted of the 1997 murder of Tomika Means ("Means") and served more than twenty years in prison until he was finally exonerated and released in 2017 due to the wrongdoing of detectives in the Homicide Unit of the BPD, including Stambach.  (**Ex 1**)  The allegations include that Stambach ignored evidence that someone else committed the murder, the preparation of a false and incomplete statement, and provided an affidavit "with false and misleadingly incomplete information" just like in this case. Complaint ¶¶ 64-67, 74, 92-93.

The Dixon Complaint (1:19-cv-01678-WMS-JJM Document 1 Filed 12/16/19) (**Ex 2**) alleges that the plaintiff also "spent 27 years wrongfully incarcerated for a crime that he did not commit: a 1991 Buffalo shooting that

{H4716803.1}                                3

resulted in the death of Torriano Jackson." Complaint ¶1. Among other allegations against Stambach the Dixon Complaint alleges:

> 11. Despite this extraordinary evidence that Mr. Scott was guilty and Mr. Dixon was innocent, Defendants remained committed to making the charges against Mr. Dixon stick. When Mr. Scott went to the BPD Homicide Section and confessed, the lead detective, Defendant Mark Stambach, told him, "We got who we want. Get the hell out of here." Defendant Stambach—a former BPD narcotics officer with a reputation for planting evidence, and whose work as a homicide detective has now resulted in multiple exonerations—later threatened Mr. Scott's life, coercing him to recant his truthful confession.

The Complaint is full of detailed allegations against Stambach's direct and significant involvement in obtaining the improper conviction of Dixon for murders. Notably, Erie County and the DA's Office submitted a cross-claim against their co-defendants including Stambach.

Finally, the *Peters/Dejac* case is well-known and notorious in the Buffalo area. This Court issued a decision in the case that provides much of the basic information regarding the improper and invalid conviction of the plaintiff for murdering her own daughter. *See Peters v. City of Buffalo*, 848 F. Supp. 2d 378 (W.D.N.Y. 2012). The case was settled after this Court's decision that the DA attorneys were not entitled to absolute immunity to extent that attorneys' actions were outside scope of prosecutorial roles; the attorneys were not entitled to qualified immunity; and the plaintiff stated claim for § 1983 liability against

{H4716803.1}                              4

county and was allowed to amend her complaint. The allegations against Stambach included the following noted in this Court's decision:

> In September 2007, a cold case investigation unit re-examined evidence admitted at trial, as well as physical evidence from the crime scene. (Comp. ¶ 32.) Clark and Marusak, as well as <u>Defendant Detective Mark Stambach</u> allegedly impeded this investigation by contacting one witness, Wayne Hudson, and compelling him to *383 sign a statement reaffirming his prior statements, and threatening another witness, Keith Cramer. (Comp. ¶¶ 120, 133.) Defendants also allegedly threatened Deputy Police Commissioner Daniel Derenda and Chief of Detectives Dennis Richards into ceasing attempts to contact witnesses. (Comp. ¶¶ 123, 131.) Despite these obstacles, the cold case investigation revealed the presence of Donohue's DNA at the crime scene. (Id.) Peters' conviction was vacated on November 28, 2007, by the Honorable Michael D'Amico, New York State Supreme Court Justice. (Comp. ¶ 33.) Peters was released pending a new trial. (*Id.*)

*Id*. at 382-383 (emphasis supplied).

The Amended Complaint (No. 10–CV–953S) (**Ex 3**) contains many other allegations against Stambach.

In light of Defendant's serious and repeated involvement in obtaining wrongful convictions that have been vacated in at least four cases (including this one), we submit that Plaintiff should not be precluded from discussing or bringing these "other clearly "related" lawsuits against Defendant. This especially true on Plaintiff's claim for punitive damages, where relevant proof includes the nature and reprehensibility of what Defendant did; how often Defendant had committed

{H4716803.1}                                                    5

similar acts of this type in the past; and the actual and potential harm created by Defendant's conduct, including the harm to individuals or entities other than plaintiff. Plaintiff's Proposed Jury Instructions, at 22.

## POINT II:   THE COURT SHOULD NOT PRECLUDE POST-SENTENCING EVIDENCE

Defendant asserts that "Plaintiff's claims focus on the time period leading up to his arrest, guilty plea, and June 16, 2006 sentencing. The Court should exclude evidence from after that date because such evidence has no relevance to the claims or issues in this case. By definition, post-indictment evidence is not probative of any elements of the three claims that remain against Detective Stambach." MOL at 9.  This is simply not true.

For certain, whether Plaintiff's confession was false and the impropriety of Defendant's conduct in obtaining the confession from Plaintiff is highly relevant to his fabrication of evidence and self-incrimination claims.  This is clear from Plaintiff's Proposed Jury Instructions submitted today and this Court's Summary Judgment Decision and Order dated February 26, 2021.  *See Ortiz v. Wagstaff*, 523 F.Supp.3d 347, 353 (W.D.N.Y. 2021) (discussing extensive facts subsequent to sentencing).

It is also probative of the malicious prosecution claim depending on exactly what Defendant intends to stipulate to as referenced in footnote 1 of page 9 of his

{H4716803.1}                                                    6

MOL. The footnote states:

> Detective Stambach plans to stipulate to the fact that other perpetrators were identified as the murderers of the Camacho Brothers through a subsequent investigation by the United States Attorney's Office for the Western District of New York, and that Plaintiff's conviction was overturned through post-sentencing/postconviction litigation in New York State Court. So there will be no need for Plaintiff to offer extensive proof of the re-investigation of the Camacho Brothers' murder, the federal grand jury proceedings charging different individuals for those murders, or the subsequent vacatur or Plaintiff's conviction. With such a stipulation, the jury can be oriented fully toward the central issues in the case which are: what Detective Stambach knew and didn't know before and during Plaintiff's confession, and what Plaintiff did and did not do during the time leading up to his sentencing.

Post-sentencing evidence is clearly relevant to at least the third and fourth elements of the malicious prosecution claim: (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor" as noted in this Court's SJ Decision.

It is also highly relevant and probative to Plaintiff's claim for punitive damages that remain in this case as demonstrated in Plaintiff's Proposed Jury Instructions.

**POINT III: THE COURT SHOULD NOT PRECLUDE EVIDENCE OF BPD'S POLICY CHANGE REQUIRING THE VIDEO RECORDING OF WITNESS INTERVIEWS UNDER FED. R. EVID. 407**

Defendant never quotes Rule 407, which states:

Rule 407. Subsequent Remedial Measures

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.

We submit that evidence of this change in policy should be admissible as showing the feasibility of precautionary measures and for impeachment given (1) the importance of the events that occurred during Defendant's interrogation and manufacturing of Plaintiff's confession to this case; and (2) Plaintiff's lack of any memory or recollection of the events in question so that he could rebut or challenge Defendant's version of the events in question. *See Ortiz*, 523 F.Supp.3d at 352-353 ("Plaintiff indicates that he "has no recollection of the events of his involvement with any members of the Buffalo Police Department ('BPD') in November 2004" and therefore cannot admit or deny this claim. (Dkt. 78-1 at ¶¶ 8, 10) *** Plaintiff was arrested on November 17, 2004, but does not recall his arrest. (Dkt. 69-7 at 2; Dkt. 69-21 at ¶ 14; Dkt. 78-1 at ¶ 14)").

**POINT IV: PLAINTIFF SHOULD BE ALLOWED TO REFER TO DEFENCE COUNSEL AS "CITY ATTOTNEYS" OR THE COURT SHOULD INSTRUCT THE JURY THAT THE CITY OF BUFFALO IS DEFENDING AND INDEMNIFYING DEFENDANT**

Defendant wants the Court to preclude Plaintiff from referring to his counsel as "City Attorneys" because the City of Buffalo is no longer a defendant. There is no question, however, that the City is defending and indemnifying Defendant. Because Defendant's ability to pay is relevant to Plaintiff's claim for punitive damages (see Plaintiff's Proposed Jury Instructions), Defendant should not be allowed to hide behind who is paying for his defense and any judgment so that he can claim he is unable to pay significant damages, especially punitive damages.

Plaintiff's counsel should be allowed to call defense counsel "City attorneys" or the jury be told that the City is defending and indemnifying him in this case.

**POINT V: PLAINTIFF SHOULD NOT BE PRECLUDED FROM OFFERING EXPERT TESTIMONY**

Plaintiff made his timely expert disclosure on January 15, 2020 by providing Defendant's counsel, then Maeve Huggins, with its Expert Disclosure. It included listing two non-physician, non-treating experts, Dr. Ronald Reiber, an economist and Canisius College Professor who regularly provides expert testimony in lawsuits throughout New York State on the subject of loss income and loss of

earning capacity,[1] and Dr. Allison Redlich of George Mason University. With the Disclosure we provided Attorney Huggins with Dr. Redlich's CV and 2015 Summary Report of Dr. Reiber. (**Ex 4**) Thereafter, the January 24, 2020 Expert Report of Dr. Allison Redlich, which fully and completely complied with Rule 26(a)(2)(B), was provided to Attorney Huggins. (**Ex 5**)  Dr. Reiber's Summary Report provided the data and information upon which his report was based as well as his opinions of Plaintiff's lost income and earning capacity to the date of the Report.

In addition to Dr. Reiber and Dr. Redlich, Plaintiff's Expert Disclosure identified several "expert witnesses who are treating physicians or medical care providers in this matter," including Dr. Brian S. Joseph, MD; Dr. Evelyn Coggins, MD; Dr. Hany Shehata, MD; Niagara County Dept of Heath; Niagara Falls Memorial Medical Center; Lake Shore Behavioral Health; and Dr. Raul Vazquez. Our Disclosure then stated:

> Plaintiff does not include any report(s) or other disclosure of such witness(es) because each is a "treating physician" or "medical care provider" and physicians and medical care providers "testifying to their personal consultation with a patient are not considered expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4)(C)." *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 224 (W.D.N.Y. 1999), citing *Mangla v. Univ. of Rochester*, 168 F.R.D. 137 (W.D.N.Y. 1996); *Baker v.*

---

[1]  *See, e.g.*, seventeen (17) published cases that come up from just from the Westlaw search "ronald /s reiber /p expert," including numerous cases in this Court.

*Taco Bell Corp.*, 163 F.R.D. 348 (D.Colo. 1995) (holding that two doctors who treated an accident victim were ordinary witnesses testifying as to their personal treatment of the patient); *Salas v. United States*, 165 F.R.D. 31 (W.D.N.Y. 1995) (holding that five doctors called to testify regarding their treatment and "opinion[s] with respect to the injuries or illnesses sustained as they causally relate to this incident and his/her opinion as to permanency" were not subject to the more extensive expert-witness requirements of Fed.R.Civ.P. 26(a)(2)(B)).

We stand by these authorities as to why expert disclosure under now Rule 26(a)(2)(C) was not and is not required for these treating physicians and medical providers to Plaintiff.

Turning to back to Dr. Reiber and Dr. Redlich and other expert reports, we note the following:

1. I am attaching here the Report of Dr. Brian Joseph for Defendant's benefit although not required to do so (**Ex 6**);

2. we provided Attorney Huggins with all of the medical record authorizations and other authorizations she requested. See Plaintiff's Response to Defendants' Document Demands (**Ex 7**).

3. Defendant's counsel never (a) complained about the expert information and reports that were served on counsel; (b) sought to depose any of Plaintiff's experts identified in the Expert Disclosure as allowed under Rule 26(b)(4)(A) and the Scheduling Order in this case (**Docket No 68**); (c) demanded

any medical examination of Plaintiff under Rule 35; or (d) disclosed any experts as trial witnesses on any subject, including the issue of damages.

As demonstrated by this conduct and Defendant's pretrial filings it is clear that Defendant is trying this case solely on liability and has no witnesses on the issue of Plaintiff's damages at all. Defendant will rely solely on cross-examination of Plaintiff's witnesses, including experts, on damages.

We expect to have a Supplemental Report from Dr. Reiber any day now providing the additional data and information from 2015 to the present and any new losses in income and earning capacity. It will be provided to counsel on the day it is received.

In our pretrial filings submitted on March 25, 2022 we also identified as an expert for trial Rachel Duchon, a certified life care planner, who was just retained the week of March 21, 2022. Her Report will be provided to counsel as soon as it is prepared – we do not have a report – and on the day we receive it.

Based on all of the above we submit that Plaintiff should not be precluded from calling any of its identified and disclosed expert witnesses. The one case cited by Defendant, *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F. Supp. 65, 67 (S.D.N.Y. 1995), is clearly distinguishable. In that case the defendant never identified his rebuttal expert economist until the Joint Pretrial Order in 1995, long after the deadline for expert disclosure. Here, we timely identified our experts

retained before trial in 2020 and provided an Expert Report of Dr. Redlich and a Summary Report of Dr. Reiber.  Moreover, the Furlong case found that the plaintiff would be prejudiced if the expert were allowed to testify.  Defendant here has made no claim to prejudice or made any case to support any prejudice on all of the facts here.

As explained by this Court in *Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 29–30 (W.D.N.Y. 2014):

> A district court has wide discretion to impose sanctions, including preclusion, where a party does not meet its discovery obligations. *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir.1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses...."). If a party does not timely disclose Rule 26(a) information, the party generally is not permitted to use that information at trial, "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1) *** . The non-disclosing party bears the burden of demonstrating that its non-disclosure was substantially justified or harmless. ***
>
> Despite the fact that the district court has wide discretion to preclude undisclosed evidence, "*preclusion is not generally ordered*," *id*. at 396, *and is "a drastic remedy and should only be applied in those rare cases where the party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure*." *Babcock v. Rezak*, 2002 WL 31654995, at *1 (W.D.N.Y. Nov. 6, 2002) (internal quotations and citation omitted). The following factors are relevant to whether evidence should be precluded as a sanction for non-disclosure: "(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of ... the precluded [evidence]; (3) the prejudice suffered by the opposing party

as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Ritchie Risk–Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC,* 280 F.R.D. 147, 157 (S.D.N.Y.2012) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)) (alterations in original). (Emphasis supplied)

We submit that this case does not rise to the level noted by Your Honor in this case to warrant precluding an expert testimony by Plaintiff.

## CONCLUSION

For all the foregoing reasons, we respectfully request that this Court deny Defendant's motion in limine, together with such other and further relief as to the Court seems just and equitable.

Dated:  April 1, 2022　　　　　　　Respectfully Submitted,
　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　HANCOCK ESTABROOK, LLP

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　Alan J. Pierce, Esq.

　　　　　　　　　　　　　　　　100 Madison St., Suite 1500
　　　　　　　　　　　　　　　　Syracuse, New York 13202
　　　　　　　　　　　　　　　　Tel No.:  (315) 565-4500

　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　LAW OFFICES OF WAYNE C. FELLE, ESQ.
　　　　　　　　　　　　　　　　Wayne C. Felle, Esq.

6024 Main St.
Williamsville, New York 14221
Tel: (716) 505-2700