UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSUE ORTIZ,

                              Plaintiff,                    **DECISION AND ORDER**

              v.                                            1:16-CV-00321 EAW

MARK STAMBACH,

                              Defendant.

_____

## INTRODUCTION

Plaintiff Josue Ortiz ("Plaintiff") sued defendant Mark Stambach ("Defendant") for violations of his civil rights related to his arrest and conviction for the murders of Nelson and Miguel Camacho, and his subsequent exoneration. (Dkt. 1). A jury trial commenced on May 3, 2022. (Dkt. 150). Prior to trial, Defendant filed a motion *in limine* (Dkt. 111) seeking, among other things, to preclude Plaintiff from offering expert testimony during trial. During the course of multiple pre-trial conferences, the Court ruled from the bench that: (1) Plaintiff would be precluded from offering testimony from Rachel Duchon, Ronald Reiber, Ph.D., and Allison Redlich, Ph.D.; and (2) Dr. Evelyn Coggins and Dr. Brian Joseph would be permitted to testify as treating physicians, but not as expert witnesses. (*See* Dkt. 155). This Decision and Order memorializes the Court's reasons for these rulings.

- 1 -

## DISCUSSION

### I.  Expert Disclosure Requirements

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert witnesses. Expert witnesses who are "retained or specially employed to provide expert testimony in the case" must provide a written report containing: "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; "any exhibits that will be used to summarize or support them"; "the witness's qualifications, including a list of all publications authored in the previous 10 years"; "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition"; and "a statement of the compensation to be paid for the study and testimony in the case."  Fed. R. Civ. 26(a)(2)(B)(i)-(vi).  As to all other expert witnesses, the proffering party must provide a written disclosure that states "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii).

These disclosures must be made "at the times and in the sequence that the court orders," but in any event "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D)(i).  If a party fails to comply with the expert disclosure requirements set forth in Rule 26(a), "the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party that fails to comply with Rule 26(a) . . . bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 209-10 (S.D.N.Y. 2021) (citation omitted).

## II.    Plaintiff's Disclosures and Procedural Background of Dispute

In this case, Plaintiff's expert witness deadline was originally set for April 4, 2017. (Dkt. 10). Multiple extensions of this deadline were granted (*see* Dkt. 64; Dkt. 68), with the final deadline ultimately set for January 15, 2020 (Dkt. 68).

On January 15, 2020, Plaintiff produced to Defendant a document entitled "Plaintiff's Expert Witness Identification." (Dkt. 118-5). In this document, Plaintiff identified Dr. Joseph and Dr. Coggins as treating physicians and stated that he "[did] not include any report(s) or other disclosure of such witness(es) because each is a 'treating physician' or 'medical care provider[.]'" *Id*. at 1-2. Plaintiff identified Dr. Redlich as an expert witness, stating "[r]eport to be provided." (*Id*. at 2). Plaintiff further identified Dr. Reiber as an expert witness, stating "[r]eport on lost income/diminished economic capacity to be provided" and "[s]ummary of [r]eport is attached hereto." (*Id*. at 2). Dr. Redlich's curriculum vitae ("CV") was attached to this document, as was a three-page (four pages including the cover page) "General Data Sheet for Josue Ortiz" prepared by Dr. Reiber. (*Id*. at 4-36).

On December 16, 2021, the Court entered a Pretrial Order scheduling a jury trial for May 9, 2022. (Dkt. 98). On February 10, 2022, the Court advised the parties that, due to the demands of its criminal docket, the trial might need to be advanced to May 2, 2022. (Dkt. 104).

Defendant filed his motion *in limine* on March 25, 2022, as part of pre-trial filings. (Dkt. 111). In his motion *in limine*, Defendant argued that Plaintiff had failed to comply with the expert disclosure requirements of the Federal Rules of Civil Procedure and thus should be precluded from offering any expert testimony. (Dkt. 111-5 at 16-18).

Plaintiff opposed the motion, contending: (1) a complete report by Dr. Redlich dated January 20, 2020, was provided to former defense counsel on an unspecified date after January 15, 2020; (2) "Dr. Reiber's Summary Report provided the data and information upon which his report was based as well as his opinions of Plaintiff's lost income and earning capacity to the date of the Report"; (3) he "expect[ed] to have a Supplemental Report from Dr. Reiber any day now providing the additional data and information from 2015 to the present and any new losses in income and earning capacity"; (4) Ms. Duchon "was just retained the week of March 21, 2022" and a report would be "provided to counsel as soon as it [was] prepared"; and (5) Dr. Joseph and Dr. Coggins were treating physicians and thus no expert disclosure was required[1]. (Dkt. 118 at 10-14).

---

[1]    Plaintiff also offered argument as to certain other physicians identified in his Expert Witness Identification, but that aspect of Defendant's motion was ultimately mooted by Plaintiff's decision not to call those witnesses. (*See* Dkt. 155).

The Court heard oral argument on Defendant's motion *in limine* on April 11, 2022. (Dkt. 128).   At oral argument, Plaintiff's counsel made a number of representations, including that: (1) the "subject matter" as to which Ms. Duchon would testify "was disclosed to counsel well before 2022"; (2) Dr. Reiber's "full CV" and "various calculations" were disclosed to City of Buffalo corporation counsel (who previously represented Defendant) in parallel state proceedings but no supplemental report had been produced; (3) Dr. Redlich's report had been mailed to City of Buffalo corporation counsel on or about January 24, 2020, by either attorney Alan Pierce or his former assistant, without a cover letter or other documentation; and (4) Dr. Redlich's report was attached as an exhibit to a summary judgment motion in a parallel state litigation.  (Dkt. 134 at 12-13, 17-19, 23-24).   Defense counsel represented that Dr. Redlich's report had not been received by City of Buffalo corporation counsel and was not in the file.  (*Id*. at 21).   Plaintiff's counsel also claimed that Dr. Coggins had been deposed by City of Buffalo corporation counsel.  (*Id*. at 30).   The Court ruled from the bench that Ms. Duchon's testimony was precluded, but gave Plaintiff a deadline of April 15, 2022, to make a supplemental submission regarding the other expert witnesses.  (Dkt. 126).

On April 15, 2022, Plaintiff filed a supplemental submission that was inconsistent, in certain regards, with his counsel's representations at oral argument.  (Dkt. 130; Dkt. 131).   In particular,  Mr. Pierce claimed that he now recalled that he had personally printed and mailed Dr. Redlich's report to City of Buffalo Corporation Counsel on February 18,

2020.  (Dkt. 130 at ¶¶ 7-8).  He submitted to the Court an undated certificate of service stating the same (Dkt. 130-2), which he later advised the Court was not contemporaneously created but had just been created after the previous Court appearance.

Mr. Pierce also claimed that a report by Dr. Joseph dated March 25, 2019, had been included on a CD served on City of Buffalo Corporation Counsel on May 10, 2019 (Dkt. 130 at ¶ 23); he then later acknowledged that this was inaccurate (*see* Dkt. 146 at ¶ 4).  Plaintiff's counsel also referenced a copy of Dr. Coggins' deposition transcript which made it clear that City of Buffalo Corporation counsel had <u>not</u> been present at the deposition.  (*See* Dkt. 130 at ¶¶ 25, 28 (referring Dkt. 78-13)).  Further, Plaintiff's counsel changed position with respect to Dr. Reiber, and instead of arguing that more fulsome disclosures had been made, simply argued that the disclosure of the summary of his report had been "adequate."  (Dkt. 131 at ¶ 32).

 The Court had another appearance on April 26, 2022, at which it ruled from the bench that Dr. Redlich and Dr. Reiber would not be permitted to testify at trial and that Dr. Coggins would be permitted to testify solely as a treating physician.  (Dkt. 142).  At a final pre-trial conference held on May 2, 2022, the Court ruled from the bench that Dr. Joseph would be permitted to testify solely as a treating physician.  (*See* Dkt. 149).

## III.   <u>Rachel Duchon</u>

The Court's decision to preclude any testimony from Ms. Duchon was straightforward.  It is undisputed that Ms. Duchon was never disclosed as an expert witness

until approximately one month before the trial of this matter was scheduled to commence and that no expert report was provided at that time.

"A district court's order precluding an expert witness based on untimely disclosure is reviewed for abuse of discretion." *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 32 (2d Cir. 2018). In exercising its discretion, the Court "must first consider four factors: '(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance[.]'" *Id.* (original alteration omitted and quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Here, a continuance was not possible. As the Court explained to the parties at the time it scheduled the trial of this matter, its docket is severely congested such that it has been forced to double- and sometimes triple-book trials. Indeed, the Court was forced to move the trial of this matter forward by one week in order to accommodate the demands of its criminal trial schedule. Further, the COVID-19 pandemic halted civil jury trials for some time, creating a substantial backlog of trial-ready civil cases that the Court must now work through. Had the Court adjourned the trial date, it almost certainly would not have been able to move forward with a trial of this matter during this calendar year. Given the age of this case, it was not a realistic option to postpone the trial to sometime in 2023. This factor accordingly weighed heavily in favor of preclusion.

The prejudice to Defendant of allowing a newly disclosed expert to testify would have been significant. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) ("[W]eighing heavily on both the prejudice and possibility of continuance factors was the fact that discovery had been closed for approximately one and a half years, and at the time of the offer of expert testimony there was only a short time left before trial." (internal quotation marks omitted)). In addition, Plaintiff's counsel offered no meaningful explanation for having failed to retain and disclose Ms. Duchon prior to the expert disclosure deadline, which had expired more than two years earlier.

Finally, as to the importance of Ms. Duchon's testimony, Plaintiff's opposition to Defendant's motion *in limine* "makes no argument regarding the importance of [Ms. Duchon's] testimony" and "[s]uch a failure is by itself sufficient to find that this factor weighs against" Plaintiff. *Simon v. City of New York*, No. 14-CV-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017) (quotation and alteration omitted). In sum, all of the relevant factors favored preclusion of Ms. Duchon's expert testimony.

## IV.   <u>Dr. Reiber</u>

The Court turns next to its decision to exclude Dr. Reiber's testimony. As an initial matter, the Court notes that the "summary of report" produced on January 15, 2020, unquestionably did not comply with Rule 26(a)(2). For example, it did not include Dr. Reiber's CV or any other explanation of his qualifications, nor did it set forth cases in which he had given prior testimony or the compensation he was being paid. Moreover,

while it set forth various data and calculations, it provided no meaningful explanation of how Dr. Reiber arrived at his opinions.  Indeed, apparently in acknowledgement of the inadequacy of this disclosure, Plaintiff's counsel indicated that a report by Dr. Reiber "on lost income/diminished economic capacity" was "to be provided."  (Dkt. 118-5 at 2).  However, no such report was timely produced—a more fulsome report was not filed until April 15, 2022, approximately two weeks before the trial in this matter was scheduled to commence.

Turning to the relevant factors, the Court has already explained why a continuance was not a viable option, and that same analysis applies as to all the expert witnesses proffered by Plaintiff.  Plaintiff's counsel again provided no meaningful explanation regarding the failure to provide proper disclosures regarding Dr. Reiber.  Instead, counsel claimed to have made further disclosures as to Dr. Reiber when they in fact had not done so, then pivoted to claiming that the disclosure made in January of 2020 was adequate when the Court had already held that it was not.

Defendant would have been significantly prejudiced by allowing Dr. Reiber to testify despite this late disclosure.  Significantly, Dr. Reiber had apparently testified in dozens of cases in recent years (*see* Dkt. 129-1 at 9-11), and it simply would not have been possible for defense counsel to perform a meaningful investigation into Dr. Reiber's prior testimony as required to prepare for cross-examination.

- 9 -

As to the final factor, the Court acknowledges that Dr. Reiber was arguably an important witness for Plaintiff.  However, "the mere fact that the evidence may be important is not sufficient to avoid preclusion where no explanation has been given for the delay."  *Simon*, 2017 WL 57860, at *6 (quotation omitted).  "Indeed, to hold otherwise 'would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial—an extreme version of the "sandbagging" that Rule 26 attempts to avoid.'"  *Id.* (quoting *Agence France Presse v. Morel*, 293 F.R.D. 682, 687 (S.D.N.Y. 2013)).  Having considered the factors as a whole, the Court determined that preclusion of Dr. Reiber's testimony was appropriate.

## V.   <u>Dr. Redlich</u>

With respect to Dr. Redlich, the Court was required to resolve the parties' factual dispute regarding service of her report.  For multiple reasons, the Court found that Plaintiff had not established that Dr. Redlich's report was served in February of 2020 as claimed by Plaintiff's counsel.

For context, Plaintiff's counsel had an established history of unreliability in this matter.  For example, as the Court explained in its Decision and Order dated February 26, 2021, in earlier proceedings in this case, Plaintiff's counsel had conceded that the Buffalo Police Department ("BPD") was not an entity that could be sued and had submitted to the Court a proposed amended complaint that omitted the BPD as a defendant.  (Dkt. 82 at 13-14).  However, Plaintiff's counsel then filed an amended complaint that differed from the

proposed amended complaint that the Court had approved in part.  (*Id*. at 14).  In particular, the amended complaint included the BPD as a defendant.  (*Id*.).  Then, Plaintiff's counsel attempted to argue that the Court had somehow ruled that Plaintiff's claims against the BPD were viable, which the Court noted "strain[ed] the bounds of reasonable advocacy." (*Id*. at 14-15).

Plaintiff's counsel further, as set forth above, made numerous inconsistent statements regarding the expert disclosures in this case.  The Court found it particularly troubling that Mr. Pierce originally stated that he had "worked with [his] assistant to send [Dr. Redlich's report] out after [he] got it on January 24th" and that he and his assistant agreed that it had been mailed but could not recall which of them had done the actual mailing.  (Dkt. 134 at 23).  Then, without any explanation for how his recollection was refreshed, Mr. Pierce claimed to recall with clarity that he had personally mailed Dr. Redlich's report to City of Buffalo corporation counsel on February 18, 2020.  (Dkt. 130 at ¶¶ 7-8).   Incredibly, counsel had no contemporaneous documentation, such as a cover letter or certificate of service, to support this contention.  Rather, as noted above, counsel presented to the Court an undated certificate of service that was created more than two years after the alleged service took place and in response to Defendant's motion *in limine*.

By contrast, defense counsel consistently represented that Dr. Redlich's report was not in their file and had not been received by City of Buffalo corporation counsel.  On these

- 11 -

facts, Plaintiff failed to persuade the Court that Defendant had been timely provided with a copy of Dr. Redlich's report.

Having made that determination, the Court's assessment was largely the same as its assessment with respect to Dr. Reiber.  A continuance was not a viable alternative to preclusion.  Plaintiff had no justifiable reason for not having timely served Dr. Redlich's report.  The prejudice to Defendant in having only received the report on the eve of trial was substantial.  Finally, Dr. Redlich's potential importance as a witness did not outweigh these considerations.  Accordingly, the Court found that Dr. Redlich's testimony should be precluded.

## VI.   Dr. Coggins and Dr. Joseph

As to Dr. Coggins and Dr. Joseph, the primary issue was Plaintiff's counsel's misapprehension of the law applicable to treating physicians.  In particular, Plaintiff's counsel relied on outdated case law to suggest that his treating physicians could testify on any subject without providing any expert disclosure.  That is not the law.  "Whether a treating physician is considered an expert, subject to expert disclosure requirements, depends, not on his or her title as a 'treating physician,' but upon the nature of the testimony the physician intends to provide at trial." *United States v. Parasmo*, No. 19-CR-1 (JMA), 2021 WL 4033885, at *1 (E.D.N.Y. Sept. 3, 2021) (citation omitted).  "Testimony as to facts or opinions formed during a consultation with a patient are admissible absent Rule 26(a)(2) expert disclosures," including "[i]n certain circumstances. . ., opinions, formed in

the course of treatment, about the cause of a patient's injuries." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 06-CV-1520, 2014 WL 5757713, at *3 (S.D.N.Y. Nov. 5, 2014).  On the other hand, "where a physician's testimony relies upon 'scientific, technical, or other specialized knowledge,' or facts and evidence outside the scope of treatment, the testimony is governed by Federal Rule of Evidence 702, requiring expert disclosure under Federal Rule of Civil Procedure 26(a)(2)." *Id.* at *4.

In this case, Plaintiff sought to have Dr. Coggins and Dr. Joseph provide opinions outside the scope of their respective treatments of Plaintiff, despite indisputably having failed to timely provide expert disclosure as to them.  For essentially the same reasons discussed previously, the Court found that Dr. Coggins and Dr. Joseph would be permitted to testify solely as treating physicians and not as experts outside the scope of that treatment. In particular, it would have been significantly and unjustifiably prejudicial to Defendant, and it was not feasible for the Court to grant a continuance to alleviate that prejudice. Further, Plaintiff's counsel offered no reasonable explanation for the failure to comply with the expert disclosure requirements.  Finally, while Dr. Coggins and Dr. Joseph were arguably important witnesses for Plaintiff, they were not precluded from testifying as to their own treatment of Plaintiff and the opinions they formed in the course of that treatment. Moreover, as explained above, importance of the witness standing alone does not generally outweigh considerations of prejudice and lack of explanation.

## VII.    __Responsibility for Actions of Co-Counsel__

Finally, the Court addresses an issue that permeated the arguments regarding Plaintiff's expert witness disclosures.  For most of the duration of this matter, Plaintiff was represented by two attorneys: Mr. Pierce and Wayne Felle, Esq.  Mr. Felle, who filed this action on Plaintiff's behalf, has represented that Mr. Pierce was retained due to Mr. Felle's lack of federal court experience and based on Mr. Pierce's "representation that he was a very experienced attorney in federal court, and for the purpose of ensuring that Federal Court discovery and trial disclosure rules and requirements were met with proficiency." (Dkt. 132-1 at ¶¶ 3-4).  Mr. Pierce was ultimately fired by Plaintiff on the eve of trial and permitted to withdraw by the Court.  (*See* Dkt. 135; Dkt. 141; Dkt. 142).  During the many pre-trial appearances in this case, Mr. Felle suggested on several occasions that Mr. Pierce was responsible for any expert disclosure failures and that Plaintiff should not be penalized therefor.  This argument lacks merit.

First, Mr. Felle was at all times counsel of record for Plaintiff.  He has been admitted to the bar of this District since 1997 and should have been fully aware of the expert disclosure requirements set forth in the Federal Rules of Civil Procedure.  As counsel of record, it was incumbent on Mr. Felle to ensure that Plaintiff's discovery obligations were satisfied.  *See J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981) ("The fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the

litigation.  The relationship between an attorney and his client is personal. . . .  It follows, then, that if counsel of record entrusts a legal matter to another attorney, that counsel of record is under a duty to exercise proper care in selecting the attorney and in supervising his work.").

Second, Plaintiff retained Mr. Felle and Mr. Pierce to represent him.  It is well-established that, absent exceptional circumstances, "the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) (quotation and alteration omitted).  There was nothing before the Court to support the conclusion that this was the rare case in which an attorney's failures should not be imputed to his client.

## CONCLUSION

For the reasons set forth above, as well as the reasons set forth on the record at the various pre-trial appearances, the Court precluded Ms. Duchon, Dr. Reiber, and Dr. Redlich from testifying at trial, and found that Dr. Coggins and Dr. Joseph could testify as treating physicians but could not offer expert opinions outside the scope of their treatment of Plaintiff.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: May 31, 2022
Rochester, New York